# LONDON AND LANCASHIRE INDEMNITY COMPANY.

## vs.

## DAVID W. COSGRIFF.

*Garnishment—Motion to Quash—Contingent Liability of Garnishee—Indemnity Policy—Notice of Accident—Waiver—Construction of Policy—Payment of Claim by Insured—Necessity—Costs and Interest.*

In the case of an attachment on judgment, no affidavit, voucher or warrant is necessary.                                    p. 663

That the liability of the garnishee to the defendant is on a contingency only, which contingency has not occurred, is not cause for quashing the attachment.                              p. 663

Under a plea of *nulla bona* by a garnishee, he may assert the defense that his liability to the debtors is subject to a contingency which has not occurred.                                    p. 663

As a general rule, the right of the attaching creditor to recover against the garnishee depends on whether the garnishee has funds, property or credits in his hands belonging to the debtor, for which the latter would have the right to sue.

p. 664

The failure of one, holding a policy indemnifying him against damages resulting from accident, to notify the company of an accident, is waived by the company's action in taking charge of and trying through its attorneys an action against the insured to recover damages on account of the accident.      p. 666

Under an automobile policy by which an insurance company agrees "to indemnify" the assured "against loss from liability imposed by law upon the assured on account of bodily injuries, including death, accidentally suffered by any person or persons," the company is not liable to the assured by reason of the recovery of a judgment for damages against the latter by a person injured by the automobile, until after payment by the assured of the judgment.                          pp. 666-673

That an indemnity policy against loss by reason of legal liability for injuries provided that the company issuing the policy would, at its own expense, investigate, defend or settle, in the name of and in behalf of the assured, any claims, demands or suits on account of injuries, and that the company did defend such a suit brought against the assured, did not make the company liable to the assured for the amount of a judgment recovered therein against the latter until after the payment of the judgment by the assured, the policy not otherwise involving an indemnity against liability as distinguished from actual loss.
pp. 670-673

Under a provision in an indemnity policy by which the company issuing the policy agreed to defend or settle in behalf of the assured any claims, demands or suits on account of injuries, and to "pay all costs taxed against the assured, and all interest accruing of such portion of a judgment as shall not be in excess of the company's limit of liability," the company, after defending a suit against the assured for injuries, in which a judgment was recovered against the assured, was liable for any costs taxed therein against the latter, as well as interest on the judgment, even though not liable for the amount of the judgment, this not having yet been paid by the assured. p. 674

*Decided January 31st, 1924.*

Appeal from the Circuit Court for Montgomery County (URNER, C. J., and PETER and WORTHINGTON, JJ.).

Attachment on judgment in favor of David W. Cosgriff against Angelia R. Carman, laid in the hands of the London and Lancashire Indemnity Company of America as garnishee. From a judgment of condemnation, said garnishee appeals. Reversed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Jas. J. Carmody,* with whom was *John A. Garrett* on the brief, for the appellant.

*Thomas L. Dawson,* with whom were *Dawson & Dawson* and *Albert M. Bouic* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal by the London and Lancashire Indemnity Company of America, of New York, garnishee of Angelia R. Carman, from a judgment of condemnation rendered against that company in favor of David W. Cosgriff. Mrs. Carman, who was the owner of an automobile, had an accident on the second day of September, 1919, by which the appellee was injured. He sued her and recovered judgment in the Circuit Court for Montgomery County of $7,500, with interest from the 3rd day of January, 1922, and costs. Mrs. Carman had an automobile policy which was issued by the appellant, and an attachment was issued on the judgment, and, as shown by the return, it was laid in the hands of the appellant on the 4th day of February, 1922. The company, by its attorneys, James J. Carmody and John A. Garrett, appeared and filed a plea of *nulla bona* on the 13th of March, 1922, and the same day the plaintiff filed interrogatories to be answered by the garnishee. It answered the interrogatories, denying any liability to the defendant, Mrs. Carman, or that it had paid her any money, or that it had delivered to her any goods or property, or to any other person for her, but stated that it had issued "a policy of indemnity" to her, a copy of which was filed. On the 16th day of November, 1922, the garnishee filed a motion to quash the attachment on the grounds: First, because there was not a sufficient affidavit filed; second, because the voucher attached to the affidavit was not a sufficient cause of action; third, because the warrant on which the attachment was issued was fatally defective on its face, inasmuch as it does not appear to have been properly issued; fourth, because the copy of the indemnity bond filed in this case by the garnishee clearly and fully sets out the undertaking of the garnishee to the defendant, which is to indemnify the said defendant upon contingency, which contingency has not occurred, and there is, therefore, no liability to the defendant and no money or credits to which the defendant is entitled from the garnishee.

The court overruled the motion to quash the attachment, the garnishee excepted, and the court's action is presented by the first bill of exceptions. As this was an attachment on a judgment, there was no affidavit, voucher or warrant necessary, and therefore the reasons for filing the first, second and third grounds for the motion to quash are not apparent. Nor would the fourth be good cause for quashing the attachment. The writ of attachment is not in the record, and although a garnishee under our practice can make a motion to quash such a writ, if there is any ground for it, there is nothing before us to show any irregularity in this writ. The fourth reason assigned would not be cause for quashing the attachment, but the question intended to be presented by it can be considered under the plea of *nulla bona,* as apparently was done. A petition to quash and set aside the attachment was filed on the 17th day of November, 1922, and was, according to the appellant's brief, on the theory that section 20 of article 9 of the Code was applicable, but without deeming it necessary to discuss that, it is clear, from what we said with reference to the fourth reason assigned for the motion to quash referred to above, that in our opinion is not raised by such a petition, although the construction of the policy was before the court under the issues made by the plea of *nulla bona* filed by the garnishee, and subsequent pleadings. That petition was, therefore, properly refused. That disposes of the questions presented by the first and second bills of exceptions, and as the important questions involved in the case are presented by the rulings on the prayers, we need not make further reference to the motion of the plaintiff for a judgment of condemnation, which does not appear to have been specifically acted on by the court. Inasmuch as there was no evidence included in the bills of exceptions in reference to the policy, we do not see the necessity of bills of exceptions, as for aught that appears in them the assured may have paid the judgment against her, or some part of it, and the mere fact that this policy was issued would not be ground for a motion to quash, but it would not be necessary

to refer further to the subject, without pointing out when bills of exception are necessary.

It appears from the docket entries that on March 25th, 1923, the case was submitted to a full bench. Testimony was taken and two prayers, numbered 1 and 2, were offered by the plaintiff and were granted by the court. The ruling on them constitutes the third bill of exceptions. Special exceptions to those prayers were filed, but were overruled, and the action of the court presented by the fourth and fifth bills of exceptions. A judgment of condemnation in favor of the plaintiff for $5,393.32, with interest from the 10th of May, 1923, and costs, was entered. From that judgment this appeal was taken.

The proper construction of the policy of indemnity is the important question before us. The garnishee claims that it is not liable because the insured has not paid the judgment against her or any part of it.

Before discussing that question it will be convenient to refer to *Hodge and McLane on Attachments,* sec. 148, and cases cited in the notes, to show that "the general rule is that the right of the attaching creditor to recover against the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment, and the test of the garnishee's liability is that he has funds, property or credits in his hands, belonging to the debtor, for which the latter would have the right to sue. The plaintiff is subrogated, as against the garnishee, to the rights of the debtor, and can recover only by the same right, and to the same extent, as the debtor might recover, if he were suing the garnishee. But the above general rule is subject, of course, to some exceptions." A number of exceptions are mentioned by the authors in that section, amongst others, that in some cases an attachment may be laid in the hands of a garnishee before the debt owing by the latter to the debtor in the attachment has matured; that equitable interests, which can ordinarily be enforced only in a court of equity, may be attached, and that the plaintiff's right to a judgment of condemnation does

not depend upon there being funds or credits in the hands of the garnishee at the time of the service of the writ, but upon whether funds have since come into his hands, or are in his hands at the time of trial.

Although it is contended in the brief of the company that notice was not given to it as required by the policy, there does not seem to be any substantial foundation for that. The provisions relied on are:

> "Upon the occurrence of an accident, or notice of any claim, the assured shall give immediate written notice thereof to the company or its duly authorized agent. If suit is brought the summons or other process shall be immediately forwarded to the company."

No special reliance was placed on an alleged failure to give notice in any of the papers filed by the appellant, and it is shown that the company took charge of the trial of the suit between the injured party and the assured, and the company's regular attorney and another attorney employed by it to defend, and, as far as appears from the record, no objection whatever was made by it to any omission on the part of the assured to notify it of the accident. There is no provision in our statute, or requirement under our practice, to leave the summons or other process with the defendant when a suit at law is brought against an individual. But the evidence shows that the accident which formed the basis of the suit against Mrs. Carman was in the State of Connecticut; that she did not know that anyone was injured, although she admits that Mr. Cosgriff was the one that figured in the accident; "that she notified the company of the accident through Mr. Malcolm McConihe about two or three days after the accident, and after the accident she got a communication to appear in court. After that, Mr. Carmody called; that she had not known Mr. Carmody prior to that; that she told him the particulars of the case, but did not know whether they were reduced to writing."

Mr. McConihe testified as follows: "That he resided in Washington and that he knew Mrs. Carman, and he received a notice from the defendant about an accident. He testified that Mrs. Carman came down to the bank in a day or two after the accident and that she and he notified M. M. Parker and Company, agents of the company, of the accident, but did not recall whether the notice was in writing or not; that this policy was issued by M. M. Parker & Company through his instructions, and that he and Mrs. Carman notified them of the accident. He testified further that Mrs. Carman bought a machine under a chattel mortgage, and the Merchants' Bank loaned the money and that whenever the bank loans money on machines they have them insured for their own protection; that Mrs. Carman had paid for the machine long ago."

The record does not very clearly show what Mr. McConihe's connection with the matter was, but apparently he either represented the bank which loaned Mrs. Carman the money with which to buy the automobile, or was either an agent himself of the indemnity company, or made some arrangement with the company's agent about policies to be furnished persons borrowing money from the bank. There can be no doubt, however, that the company waived any question about the notice in writing, as it took charge of and tried the case on the part of the defendant through its own attorneys. It denied in this case any liability and did not rely on the question whether there had been such notice to it as the policy provided for.

We will now consider what we regard as the real question in the case. The policy begins with this statement:

"In consideration of the premium and the warranties of the assured, hereinafter set forth and made a part of this contract, hereby agrees to indemnify the person, firm or corporation named in the schedule, hereinafter called the assured, against loss from the liability imposed by law upon the assured for damages

on account of bodily injuries, including death acci-
dentally suffered by any person or persons by reason
of the ownership or maintenance of any automobile
enumerated in the schedule during the period herein-
after stated and for the purposes hereinafter described."

There have been a great many decisions rendered by the
courts with reference to the proper construction of indemnity
contracts, although there are comparatively few involving
damages done by automobiles, when the great number of
them now using our public highways are remembered. It
may be a surprise to many owners of automobiles to find that
policies such as we now have before us do not afford them
the protection that they supposed they had, but however that
may be, we cannot change the contract between the parties
to meet special circumstances, if the contracting parties have
not protected themselves.

In 31 *C. J.* 419, it is said: "Generally speaking, the
word (indemnity) carries with it two meanings: (1) In the
sense of giving security; and (2), in the sense of relieving
a party from liability for damage already accrued; and in
a broad and general sense, indemnity is that which is given
to a person to prevent his suffering damage."

In section 3 on that page, it is said: "In respect to their
subject matter, indemnity contracts are of great variety; but
as regards the nature of the responsibility assumed by the
indemnitor, a contract of indemnity is generally either one
against liability, or one against mere loss or damage; and in
respect to the accrual of liability thereon, the law makes a
clear distinction between these two forms of indemnity con-
tracts. Whether a contract of indemnity is one of indemnity
against liability, or one against mere loss or damage, depends
upon the true intent and meaning of its covenant; if the con-
tract simply indemnifies and nothing more, it is against loss
or damage only; but if it binds the indemnitor to do a cer-
tain act or pay sums and the performance of the act or pay-
ment of such sums will prevent harm or injury to the indem-

nitee, it is a contract of indemnity against liability." It is
said in section 32, page 437, of 31 *C. J.,* that "an indemni-
tor's liability to the indemnitee accrues when, under the
terms and conditions of the particular contract, the covenant
of indemnity is broken, and it may be stated generally that
there is a breach of the covenant and the indemnitee's right
of recovery accrues as soon as he has recovered the loss or
damage against which he was to be saved harmless, or the
liability against which he was to be protected has become
fixed and absolute, and until such time there can be no re-
covery against the indemnitor." In section 33, page 438, it
is stated: "Where the indemnity is against liability, the
cause of action is complete and the indemnitee may recover
upon the contract as soon as his liability has become fixed
and established, even though he has sustained no actual loss
or damage at the time he seeks to recover. Thus, under such
a contract, a cause of action accrues to the indemnitee upon
the recovery of a judgment against him, and he may recover
from the indemnitor without proof of payment of the judg-
ment." A great many cases are cited in notes 77 and 78 to
that section.

Then in section 35, page 439, indemnity against loss or
damage is considered, and it is said: "Where the contract
is strictly one of indemnity, that is, one against loss or dam-
ages, the indemnitee cannot recover until he has made pay-
ment or otherwise suffered an actual loss or damage, against
which the covenant runs; and in some jurisdictions this rule
is prescribed by statute. Under such a contract of indem-
nity, a mere legal liability to pay or the mere fact that judg-
ment has been obtained against the indemnitee is not suffi-
cient to raise a cause of action on the contract, although it
has been held that a liability to a loss, if attended with in-
convenience, constitutes a breach of covenant. Where the
loss or damage indemnified involves a payment, it is not suf-
ficient that the indemnitee is under a liability to pay, to en-
title him to recover, but he must make an actual payment of

the loss or damage." A number of cases are cited as to that in note 86, p. 439 of 31 *C. J.*, and some in notes 88, 89 and 90 on p. 440. See also 22 *Cyc.* 79, 87, 90-92; 14 *R. C. L.*, article "Indemnity," beginning on page 42, particularly paragraphs 1, 2, 13, 15, 16, and 16 *Am. & Eng. Enc. of Law* (2nd Ed.), 173, 176-179; *Stephens* v. *Pennsylvania Casualty Co.*, 135 Mich. 189, and notes in 3 Ann. Cas. 480-482; *Faulkner* v. *McHenry*, 235 Pa. 298, and notes to that case in Ann. Cas., 1913 D, 1152, 1156. It is said in the note to *Stephens* v. *Pennsylvania Casualty Co.*, *supra*, that "the rule of the common law is that to authorize a recovery upon a mere bond of indemnity, actual damage must be shown," and a large number of cases are cited in that note. In *Faulkner* v. *McHenry*, as reported in Ann. Cas. 1913 D, *supra*, in a note beginning on page 1152, the distinction between contracts against loss and contracts against liability is again pointed out and many recent cases cited.

Excepting in so far as it may be deemed to be limited by condition C of the policy, which reads: "In addition to the limits stated, the company will, at its own expense, investigate, defend or settle in the name of and in behalf of the assured, any claims, demands or suits on account of injuries, including suits alleging injuries, and demanding damages, although the claims, demands or suits are wholly groundless, fraudulent or false, and will pay all costs taxed against the assured, and all interest accruing of such portion of a judgment as shall not be in excess of the company's limit of liability as herein expressed, rendered on account of any claim covered hereunder," the indemnity quoted from the first part of the policy would seem to be very clear under the great weight of authority cited above and under the notes to those authorities. The insurer "agrees to indemnify ('indemnity' is in the record, but evidently was 'indemnify' in the original) * * * the assured, against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death, accidentally suffered by

any person or persons, by reason of the ownership or maintenance of any automobile enumerated in the schedule, during the period hereinafter stated, and for the purposes hereinafter described."

The period covered was from May 23rd, 1919, to May 23rd, 1920; the automobile was described as a Roamer, 1919 model, six-cylinder touring car, and the purposes for which used are private and pleasure. We do not understand that it is contended that the assured violated any of those provisions.

There are some cases in which a contract of this kind was treated as indemnity against liability, and a few held that the assured could go into equity. In some policies or contracts of indemnity, there is also what is spoken of as a "no action clause," which in substance is that "no action shall lie against the insurer unless brought by the assured himself to reimburse himself for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue," or something to that effect. It is contended by attorneys for the appellee that, in as much as there was no such clause or provision in this policy, the presumption was that that construction was not to be placed on the policy, but we find no authority for that.

In *Sanders* v. *Frankfort Marine, Accident and Plate Glass Insurance Co.,* 72 N. H. 485, that court took a more liberal view of the policy than is done in the majority of the decisions, and held among other things that when the policy had a provision in it similar to Condition C above, and the company, under that provision, took charge of and defended an action against the assured by the injured one, "that after taking control of the proceedings in a suit against the assured, the insurer could not thereafter be discharged except by a payment of the indemnity to the assured, or receiving his discharge."

We have found several other cases to the same effect, but in *Poe et al., Receivers of United Surety Co.,* v. *Phila-*

*delphia Casualty Co.*, 118 Md. 347, this Court, through JUDGE PEARCE, declined to adopt the view expressed in the *Sanders case,* holding that it was, as said in *Allen* v. *Gilman,* 137 Fed. 136, "not only against the weight of authority, but unsatisfactory in itself." In the *Poe* case, the Gore-Meenan Construction Company, for the purpose of protecting itself against loss by reason of any accident occurring on the work to any of its employees, entered into an agreement with the Philadelphia Casualty Company, whereby said casualty company did insure the Gore-Meenan Company against any such loss. An accident did occur, resulting in the death of George Worden, one of its employees. An attachment was issued by the administratrix of Worden against the Gore-Meenan Company, on the ground of negligence of said company causing the death of Worden, and assets of the Gore-Meenan Company in the hands of the New Haven Water Company to the extent of $6,000 were attached for the payment of any judgment that might be recovered in that suit. The Philadelphia Casualty Company was immediately notified and it defended the suit in the name of the Gore-Meenan Company. The United Surety Company, at the request of the Gore-Meenan Company, issued to the plaintiff in said suit, the administratrix of Worden, its bond or writing obligatory to release said attachment, whereby it bound itself that the said Gore-Meenan Company would on demand pay to said plaintiff the amount of any judgment recovered by it in said suit not exceeding $6,000 with interest. The trial resulted in a verdict for the plaintiff against the Gore-Meenan Company for $4,500, with interest from March 2nd, 1910, and costs, which was affirmed by the Supreme Court of Connecticut, whereby said judgment became final and conclusive. Subsequent to the judgment, and before it was affirmed, the Gore-Meenan Company became hopelessly insolvent, and the plaintiff made demand on the surety company and brought suit on the bond in the Superior Court of New Haven County and recovered judgment there-

on for $4,861.46 and costs. The receivers of the United Surety Company, by authority of the court appointing them, paid said judgment in full and had it entered to their use. They claimed they were entitled to be subrogated to the rights of the Gore-Meenan Company against the Philadelphia Casualty Company, and were entitled to recover from it the amount of said judgment so paid by them. The receivers filed a bill in equity in which they prayed that a decree be passed declaring that the United Surety Company and the complainants as its receivers were subrogated to the same extent as if the said Gore-Meenan Company had paid the said judgment, and that the court by its decree order the Philadelphia Casualty Company to pay to the complainants the amount of said judgment and costs paid by them. JUDGE PEARCE, speaking for this Court, said that the complainants rested "their claim to be subrogated 'to all the rights of the Gore-Meenan Company against the Philadelphia Casualty Company under the terms of the policy of liability insurance mentioned, to the same extent as though the said Gore-Meenan Company had paid the amount of said judgment,' upon the relation which the United Surety Company assumed in executing to the administratrix of Worden its undertaking that the Gore-Meenan Company would on demand pay to her the amount of any judgment recovered by her, not exceeding $6,000," but JUDGE PEARCE went on to say that the Gore-Meenan Company was not a party to the instrument. It was the direct and sole obligation of the United Surety Company to the personal representative of Worden. It had no relation to the legal liability of that company for the death of Worden. The sole purpose was to procure the release of the attached funds. It was held that when the receivers paid the judgment obtained against the Gore-Meenan Company by the administratrix of Worden, they thereby obtained an equitable title to the judgment, and it was properly entered to their use, but the United Surety Company could acquire no rights by the payment and assign-

ment of said judgment, either legal or equitable, as against said casualty company, which was not liable to the Gore-Meenan Company under the terms of the policy of the casualty company. He quoted from *Sheldon on Subrogation, Bisham's Principles of Equity,* and 27 *Am. and Eng. Enc. of Law,* 212, and said: "It is shown from them that the only element of substitution in subrogation is of one person in the place of another, and that the person so substituted can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor." He also referred to the case of *Bain* v. *Atkins,* 181 Mass. 240, 57 L. R. A. 791, where it was sought to have the court declare an insurance against loss through liability for personal injuries to be a trust fund for the benefit of the injured person, but the court held otherwise, saying: "The only parties to the contract of insurance were Atkins, the employer and the company," and JUDGE PEARCE further quoted from that opinion, where it was said "that the insurance was wholly a matter between the company and Atkins, in which the plaintiff had no legal or equitable interest, any more than in any other property belonging absolutely to Atkins."

JUDGE PEARCE said in the *Poe* case: "In tracing the history of these policies, it will be found the earlier ones were so worded as to insure employers against *liability* incurred to their employees for death or injuries resulting from the employers' negligence, and the court humanely and rationally held that liability was fixed by the rendition of a final judgment, and that the casualty companies were liable on their contract, though the employer had not actually discharged his liability by payment. Such is the tenor of the decisions in *Anoka Lumber Company* v. *Fidelity and Casualty Company* (Minn.), 30 L. R. A. 689, and *Ross* v. *American Employers Liability Company* (N. J.), 38 Atl. Rep. 22. This class of decisions resulted in changing the wording of the policies so as to cover only liability which had been paid."

Although the conclusion we have reached will require us to reverse the judgment appealed from, the case will be remanded for a new trial, and apparently, under Condition C, the garnishee does owe the assured some money, as it agreed to pay all costs taxable against the assured and all interest accruing of such portion of a judgment as shall not be in excess of the company's limit. As the judgment against Mrs. Carman was entered in January, 1922, and the garnishee case was not tried until May, 1923, there was then due by the garnishee the costs taxed against the assured and interest on the judgment from January 3rd, 1922. As by Condition C the appellant agreed to pay those, there was no reason why the costs and such interest as was due on the judgment could not have been recovered by the assured, although she had not paid the judgment to the injured one. We cannot agree with what is said in the appellee's brief to have been the opinion of the lower court that, by reason of the company being liable for the costs and the interest on the judgment, it could have been sued for the whole amount of the judgment not exceeding the limit of the policy. We do not feel justified in construing Condition C to go that far. As the company reserved the right and agreed at its own expense to investigate, defend or settle in the name of and in behalf of the assured, it was only fair for the company to agree to pay all costs taxed against the assured, and all interest accruing on such portion of the judgment as should not be in excess of the company's limit of liability. It would have been very unfair if it did not pay those costs and accruing interest from the judgment, as presumably it was defending for its own benefit as well as that of the assured, and there would necessarily be costs involved and the judgment would bear interest.

It follows from what we have said that there was error in granting the two prayers offered by the plaintiff, and the judgment of condemnation must be reversed and a new trial awarded.

> *Judgment of condemnation reversed and new trial awarded, the appellee to pay the costs.*