# UNITED STATES FIDELITY AND GUARANTY COMPANY *vs.* LILLIE L. WILLIAMS.

*Bills of Exception—Submission to Appellee—Automobile Indemnity Policy—Construction—Judgment Against Assured—Collusion—Attachment on Judgment.*

An appeal will not be dismissed by reason of the appellant's failure to submit the bills of exception to the appellee within the time named in Acts 1916, ch. 625, for such submission, if there is no evidence that damage or injury resulted to the appellee by reason of the delay in this regard, and they were signed by the court within the time prescribed in the statute.

p. 297

If a policy of insurance on an automobile, against claims resulting from an accident, is a contract of indemnity against loss merely, the recovery of a judgment against the insured on account of such a claim does not create a liability under the policy until the judgment is paid, while it is otherwise if the policy is a contract to indemnify against liability.      p. 29

As a general rule, the right of the attaching creditor to recover against the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment, and the test of the garnishee's liability is that he has funds, property, or credits in his hands belonging to the debtor, for which the latter would have a right to sue.      pp. 299, 300

Under an automobile policy by which an insurance company agreed to "insure" "against loss" resulting from claims upon the assured for damages in consequence of an accident resulting in bodily injuries or death, the company is not liable to the assured by reason of a recovery of a judgment against the assured on account of such injuries until the judgment has been paid by assured, the contract being one of indemnity against loss rather than of indemnity against liability.      pp. 300, 302

In a policy of automobile indemnity insurance, a provision that an action may be maintained by the injured person against

the insurer, in case the injured person's execution against the assured is returned unsatisfied because of "the insolvency or bankruptcy" of the assured, *held* to refer to the inability of the assured to meet his financial obligations, and not to mean that he must be adjudicated an insolvent or bankrupt, before the injured party can sue the insurer.                pp. 303, 304

The return of *nulla bona* by the sheriff to a writ of execution, standing alone, is not sufficient to establish the insolvency or bankruptcy of the insured for the purpose of such provision, but when such a return is made, the question of insolvency or bankruptcy remains a fact to be proved by competent evidence.
p. 304

In a policy of automobile indemnity insurance, a provision that whenever requested by the insurer, the assured shall aid in securing information, evidence, and the attendance of witnesses, in effecting settlements, and in defending suits, requires the assured in good faith to render assistance in the trial of any suit defended for him by the insurer.                pp. 304-306

Where the assured under an automobile indemnity policy notifies the insurer of the pendency of an action in reference to the subject matter of the policy, and the insurer is given an opportunity to defend the suit, the judgment therein, if obtained without fraud or collusion, is conclusive upon the insurer. p. 306

In an action on a policy of automobile indemnity insurance, brought by one who had recovered a judgment against the assured for personal injuries received in an accident, *held* that certain testimony was not sufficient to show fraud or collusion between the assured and the person injured, in connection with the action by the latter in which the judgment was recovered, and which was defended by the insurer on behalf of the insured, but it merely tended to show a belief on the part of the insurer's counsel that the insured was not acting in entire good faith.
p. 307

When, by a policy of automobile indemnity insurance, the insurer agrees to pay the assured the expenses incurred in defending any suit, and also the interest on any judgment for damages on account of an accident within the limits of the insurance, and any costs taxed against the assured on account

thereof, the insurer being liable to the assured for such interest and costs, the holder of such a judgment may recover the interest and costs by an attachment on the judgment, laid in the hands of the insurer as garnishee.                    p. 308

*Decided June 10th, 1925.*

Appeal from the Court of Common Pleas (AMBLER, J.).

Attachment on judgment by Lillie L. Williams against the United States Fidelity and Guaranty Company, as garnishee. From a judgment in favor of said Lillie L. Williams, said company appeals.    Reversed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Edgar Allan Poe,* for the appellant.

*William Trickett Giles* and *W. W. Parker,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

On the 25th day of March, 1922, the appellant, United States Fidelity and Guaranty Company, issued a policy of insurance to Hugh R. Price.    The amount stated in the policy was the sum of $5,000, and the term of the policy was from noon on the 25th day of March, 1922, to noon on the 25th day of March, 1923.    The policy is set out in full in the record and the portions thereof which are necessary to be considered for determination of the questions involved in this case are as follows:

> "United States Fidelity and Guaranty Company, Baltimore, Maryland (hereinafter called the company), in consideration of the premium and the declarations set forth in the schedule of statements hereto and subject to the terms, limits and conditions set forth herein, does hereby insure the assured named and described as such in the schedule of statements hereto,

against loss and/or expense, arising or resulting from claims upon the assured for damages in consequence of an accident occurring within the limits of the United States and Canada during the term of this policy, by reason of the ownership, maintenance or use (including the carrying of goods thereon and the loading and unloading thereof when commercially used) of the automobile or any of the automobiles enumerated and described herein resulting in

"(A) Bodily injuries or death resulting at any time therefrom, suffered by any person or persons other than any employee or employees of the assured while engaged in the care, operation or maintenance of any of the assured's automobiles.

*           *           *           *

"In addition to the above, the company does hereby agree

"(1) To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, on account of damages suffered or alleged to be suffered under the circumstances hereinbefore described;

"(2) To pay the expenses incurred in defending any suit described in the preceding paragraph, also the interest on any judgment within the limits of the insurance hereby granted and any costs taxed against the assured on account thereof;

*           *           *           *

"Insolvency Provision.

"(5) The insolvency or bankruptcy of the assured hereunder shall not release the company from the payment of damages for injuries sustained or loss occasioned during the life of this policy, and in case execution against the assured is returned unsatisfied in an action brought by the injured, or his or her personal representatives in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person or his or her personal representative against the company under the terms of the policy

for the amount of the judgment in said action, not exceeding the amount of the policy.

\*            \*            \*            \*

"Paragraph B.

\*            \*            \*            \*

"2.   No action by the assured shall lie against the company until the amount of the damages for which the assured is liable by reason of any casualty covered by this policy is determined, either by a final judgment against the assured or by agreement between the assured and the plaintiff with the written consent of the company; nor unless such action is brought within two years after the rendition of such final judgment.

\*            \*            \*            \*

"4.   The assured shall not voluntarily assume any liability; nor interfere in any negotiations or legal proceedings conducted by the company on account of any claim; nor, except at assured's own cost, settle any claim; nor, without the written consent of the company previously given, incur any expense, except as provided herein for immediate surgical relief at time of accident.

"5.   Whenever requested by the company, the assured shall aid in securing information, evidence and the attendance of witnesses in effecting settlements and in defending suits hereinbefore referred to.   The assured shall at all times render to the company all reasonable co-operation and assistance."

The assured named in the policy was Hugh R. Price, and the automobile mentioned in the schedule was a Ford sedan. On May 19th, 1922, the Ford sedan mentioned in the schedule, while being driven by Hugh R. Price, the other occupants thereof being the wife of Hugh R. Price, his aunt, Lillie L. Williams, and her husband, Edward A. Williams, was in collision with a car of the United Railways and Electric Company on North Avenue, in the City of Baltimore. By reason of the collision Lillie L. Williams was injured, and thereafter brought suit in the Court of Common Pleas of Baltimore City against the United Railways and Electric

Company and Hugh R. Price for damages resulting from the injuries received at the time of the collision. This suit was tried before a jury and resulted in a verdict and judgment in favor of the defendant United Railways and Electric Company and against the defendant Hugh R. Price for the sum of $5,000, with interest from October 13th, 1923, the date upon which the judgment was made absolute, and costs. At the time of the institution of this suit Hugh R. Price notified the appellant of its institution, and the appellant's counsel defended the suit on behalf of Price. After the time for appeal from this judgment had elapsed the plaintiff in that suit, Lillie L. Williams, sued out an attachment in the Court of Common Pleas on the judgment thus obtained, and the return of the sheriff on said attachment was:

> "Laid in the hands of the Robinson Oil Co., a corporation, by service on Edward G. Cole, secretary, on the 13th day of December, 1923, at 4.35 o'clock P. M., in presence of Maurice L. Yaffe and garnishee summoned. Also laid in the hands of the United States Fidelity and Guaranty Company, a corporation, by service on Joseph W. Bristor, assistant to president, on the 12th day of December, 1923, at 4.50 o'clock P. M., in presence of Maurice L. Yaffe and garnishee summoned. Also a copy of the writ of attachment, the process in the within cause, left with tach garnishee.—John E. Potee, Sheriff."

On January 11th, 1924, interrogatories on behalf of Lillie L. Williams, directed to the United States Fidelity and Guaranty Company, were duly filed and served upon the appellant. The plea of the appellant, the garnishee, filed January 19th, 1924, was *"nulla bona,"* and thereafter the appellant answered the interrogatories, the answer to all of the interrogatories being "No," except the fourth, which was:

> "In answer to the fourth interrogatory the defendant states that it issued on March 25, 1922, policy of liability and property damage insurance to Hugh

R. Price for a period of one year, which policy ex-
pired March 25th, 1923, and that said policy has
never been in the possession of the U. S. Fidelity &
Guaranty Company since it was delivered to the said
Hugh R. Price on or about March 25th, 1922, and
that it presumes that said policy is still in possession
of the said Hugh R. Price, although it has no defi-
nite knowledge to this effect."

Issue was joined, and the case upon these pleadings was
tried before a jury on the 25th and 26th days of February,
1924, resulting in a verdict in favor of the appellee for
$5,164.30, upon which verdict a judgment for that amount
was entered on the 28th day of February, 1924, with in-
terest from the 26th day of February, 1924, and costs of
suit. From the above judgment, on the 13th day of March,
1924, the appellant appealed.

On the 15th day of May, 1924, the plaintiff below, ap-
pellee here, filed her petition in the lower court praying that
that honorable court refuse to sign the bills of exception on
behalf of the defendant for the reason that said defendant
is in default of the provisions of the Act of 1916, chapter
625, of the Laws of Maryland. The appellant, on the 16th
day of May, 1924, answered said petition, setting forth its ac-
tion in respect to the bills of exception and stating therein:

"That the case was one where the jury were in-
structed by the court to render verdict for the plain-
tiff, and the question of law involved in the appeal
is one of considerable importance; that your petition-
ers feel that the rights of the plaintiff have in no
way been prejudiced by the fact that said bills of
exception were not served on the plaintiff's counsel
on the 12th day of May, instead of the 15th day of
May, and that a grave injustice will be done the de-
fendant, unless said bills of exception are signed by
your honor."

The bills of exception were filed and signed by the court
on the 16th day of May, 1924. The appellee, on the 17th

day of May, filed special exceptions to the action of the
lower court in signing the bills of exception, as follows:

"Lillie L. Williams, by W. W. Parker, her attor-
ney, represents unto this honorable court, that she
has just been apprised of the action of this honorable
court in signing the bills of exception filed by the
defendant in the above entitled case, which was done
by this honorable court on the 16th day of May,
1924, over the protest of this plaintiff contained in
her petition filed on the 15th day of May, 1924, and
this plantiff herewith respectfully excepts to the action
of this honorable court in signing said bills of ex-
ceptions and asserts in support of this special excep-
tion to the action of this honorable court the provi-
sions of the Act of 1916, chapter 625 of the Laws
of Maryland, concerning the provisions of which act
said defendant was in default before and on the day
of the signing of said bills of exceptions."

It will thus be seen that the preliminary question to be
determined is the validity of the special exceptions of the
appellee, for the reason that if these exceptions are valid the
appeal in this case should be dismissed.

The Act of 1916, chapter 625, in reference to bills of ex-
ception upon appeal from any of the courts of Baltimore
City provides:

"Bills of exception may be signed in any cause pend-
ing in any of said courts at any time within the period
that the parties, or any of them, shall have the right
to file an appeal from the rendition of the verdict by
the jury or the findings of the court upon the issue of
fact in said cause, and upon filing the order for such
an appeal, the time for signing said bills of excep-
tions shall thereby be further extended until ten days
before the period within which it is required that the
record shall be transmitted to the Court of Appeals;
provided that the party appealing, or his counsel,
shall submit the bills of exceptions to the appellee,
or his counsel, not less than thirty days prior to the
time that the record must be filed in the Court of

Appeals, for the purposes of amendments or additions to the said bills of exceptions."

The appeal in this case was taken on the 13th day of March, 1924, and the law required that the record should be transmitted to the Court of Appeals on or before June 13th, 1924. The act provides that the party appealing shall submit the bills of exception to the appellee or his counsel not less than thirty days prior to the time that the record must be filed in the Court of Appeals, which in this case would have been not later than May 13, 1924. As a matter of fact, the exceptions were presented to counsel for the appellee on May 15, 1924, after the time prescribed by the statute. The latest date that the court could sign the bills of exception, in accordance with the provisions of the statute, was ten days prior to June 13th, or June 3rd, 1924. The exceptions were actually signed by the court on May 16th, 1924, well within the period prescribed by the statute, and there is no evidence contained in the record that damage or injury resulted to the appellee by reason of the failure of counsel for the appellant to submit the bills of exception to counsel for appellee within the time prescribed. The appellee's counsel, in argument and in their brief, contend that for the reasons stated the appeal should be dismissed.

If this was the first case presenting this question we might be called upon to express our views at some length in respect thereto, but the identical question was presented and passed upon by us in the recent case of *Middendorf Co. v. Milburn,* 137 Md. 583, and is no longer a question for judicial determination in this State. In that case this Court, speaking through Judge Adkins, said: "The submission of the bills of exception to attorneys for appellee was not within the time provided by the statute, but, nevertheless, they were signed by the court before the expiration of the time limited by the statute, and it does not appear that the appellee has suffered any injury thereby. Under the authority of *Wegefarth v. Wiessner,* 132 Md. 395, the motion to dismiss is overruled."

We come now to a consideration of the real questions involved in the appeal, and which are raised by the action of the lower court in granting the prayer of the plaintiff, giving certain verbal instructions to the jury, and refusing the prayer of the defendant, and its ruling upon the testimony presented at the trial. The exception taken by the appellant to the granting of the plaintiff's prayer, giving verbal instructions to the jury, and rejecting the prayer of the defendant, constitutes the twelfth bill of exception, and will be first considered. The plaintiff's prayer was as follows: "The court instructs the jury that if they shall find from the evidence in this case that the United States Fidelity and Guaranty Company, the defendant, signed and delivered to a certain Hugh R. Price a policy of insurance dated March 25th, 1922, offered in evidence in this case, and if the said Hugh R. Price was named as the assured in said policy; and if the jury shall further find that said Hugh R. Price was driving the automobile described in said policy of insurance on the 19th day of May, 1922, in which the plaintiff in this case was a passenger, and that on said last named date the plaintiff in this case was injured while a passenger in said automobile, and that the said plaintiff sued said Hugh R. Price for said injuries and recovered a judgment in the Court of Common Pleas of Baltimore City against said Hugh R. Price in the sum of five thousand dollars for said injuries, and that said judgment has not been paid or discharged by said Hugh R. Price or by the United States Fidelity and Guaranty Company, the defendant in this case, then the verdict of the jury must be for the plaintiff in this case in the sum of five thousand dollars, with interest from the 13th day of October, 1923, and with the costs of the suit in which said judgment was recovered." That of the defendant being: "The defendant prays the court to instruct the jury that under the evidence in this case the plaintiff can only recover the court costs in the case in the Court of Common Pleas of *Williams v. United Railways Company and Hugh R. Price,* amounting to $54.30 and interest at the

rate of six per cent. per annum on the judgment of $5,000 in
said case, from October 13th, 1923, to date." In granting
the plaintiff's first prayer the court made the following state-
ment to the jury: "Gentlemen of the jury, the plaintiff
asks me to instruct you as follows": (Then read the plain-
tiff's prayer). "In other words, gentlemen, over the objec-
tion of the defendant, I have to hold that the United States
Fidelity and Guaranty Company is bound to protect the as-
sured, Hugh R. Price, by answering for the damages re-
covered by the plaintiff in that suit." The effect of this
action of the court was to direct a verdict for the plaintiff.

The correctness of the court's ruling upon these prayers
must be determined by a construction of the terms of the
policy of insurance, forming the contract between the appel-
lant and Hugh R. Price, the assured. If this policy was a
contract of indemnity against loss, the appellant had no
credits in its hands belonging to Hugh R. Price until he had
suffered loss by the payment of the judgment obtained against
him by this appellee. On the other hand, if the policy was
a contract to indemnify against liability, from and after the
time the liability of Price to the appellee was fixed and de-
termined by a judgment in her favor, the appellant did owe
Price the amount of that judgment to the extent of the sum
fixed in the policy, and the amount so due and owing to
Price was subject to attachment on the judgment obtained
by the appellee. This is the law as determined by the weight
of authority, and has been expressly so declared by this
Court in *London and Lancashire Indemnity Co. v. Cosgriff,*
144 Md. 660, in which the opinion was delivered by the
former Chief Judge. That case, like the present one, was an
attachment case, and it will be well to remember, as pointed
out by Judge Boyd, quoting from *Hodge & McLane on At-
tachment,* section 148, that the general rule is that the right
of the attaching creditor to recover against the garnishee de-
pends upon the subsisting right between the garnishee and
the debtor in the attachment, and the test of the garnishee's
liability is that he has funds, property or credits in his hands

belonging to the debtor for which the latter would have the right to sue; the plaintiff is subrogated, as against the garnishee, to the rights of the debtor, and can recover only by the same right and to the same extent as the debtor might recover if he were suing the garnishee. In other words, the appellee's right to recover under the attachment in this case depends upon and is controlled by the question of whether or not her judgment debtor, Price, could successfully maintain a suit against the appellant. If Price could compel payment under the contract to him, the appellee can recover; but if the appellant, under the terms of the contract, has such a defense as would preclude recovery by Price, then and in that event there can be no recovery by the appellee.

The contention of the appellant is that Price could not recover at all: (1) That he could not recover the amount of the judgment because by the terms of the policy the contract was one to indemnify Price against loss, and that it is necessary for him to show that he has paid the judgment recovered against him before the appellant could be required to indemnify him; (2) that Price could not recover the costs of suit and interest on the judgment recovered against him, because under clause 5 Price was required at all times to render to the company all reasonable co-operation and assistance; that he had failed to do this, and being the party to first break the contract, the appellant was thereby legally relieved from further complying with its terms.

Under the authority of the *Cosgriff* case, *supra,* the first contention of the appellant must be admitted to be sound, if there is no difference in the meaning of the contract in that case and the one now under consideration.

The wording of the policy in the *Cosgriff* case was: "In consideration of the premium and the warranties of the assured hereinafter set forth and made a part of this contract, hereby agrees to indemnify the person, firm or corporation named in the schedule, hereinafter called the assured, against loss from the liability imposed by law upon the assured for

damages on account of bodily injuries, including death, acci-
dentally suffered by any person or persons by reason of the
ownership or maintenance of any automobile enumerated in
the schedule during the period hereinafter stated and for the
purposes hereinafter described," while the provision of the
present policy is: "In consideration of the premium and the
declarations set forth in the schedule of statements hereto,
and subject to the terms, limits and conditions set forth
herein, does hereby insure the assured, named and described
as such in the schedule of statements hereto, against loss
and/or expense arising or resulting from claims upon the
assured for damages in consequence of an accident occurring
within the limits of the United States and Canada during
the term of this policy by reason of the ownership, mainte-
nance or use of the automobile or any of the automobiles
enumerated and described herein, resulting in bodily injuries,
or death resulting at any time therefrom, suffered by any
person or persons other than any employe or employes of the
assured while engaged in the care, operation or maintenance
of any assured's automobiles." It will be seen that if there
is any difference in the meaning of these two policies it is
by reason of the use of the words "indemnify against loss" in
the policy in the former case and the words "insure against
loss" in the present case. Is there such legal distinction be-
tween the word "indemnify" and the word "insure" as
would warrant this Court in distinguishing the present case
from the *Cosgriff* case?

The definition of "indemnify" is "to save harmless, to
secure against loss or damage, to make good, to put one in the
situation he was in before sustaining loss." *Encyclopedic
Law Dictionary, Shumaker and Longsdorf,* page 474. In 22
*Cyc.* 77, the definition of "indemnify" is, "to save harmless,
to secure against loss, damage, injury or penalty, to compen-
sate for loss or injury, to make good, to make up for that
which is past, to reimburse, to remunerate."  31 *Corpus
Juris,* p. 416, defines "indemnify" to mean, "to compensate
for loss or injury, to protect fully and save harmless, to make

good, to make up for that which is past, to reimburse another for some loss, to remunerate, to save harmless from loss or damage, to secure against damage, injury, loss or penalty." The authorities quoted define the word "insure" to mean, "to engage to indemnify a person against pecuniary loss from specified perils, to act as an insurer." 22 *Cyc.* 1450; 33 *Corpus Juris,* p. 157. The same definitions of these terms are given in *Worcester's Dictionary, Century Dictionary,* and *Webster's Dictionary,* all of which have been repeatedly quoted with approval by various courts, as shown by the notes in *Cyc.* and *Corpus Juris* at the pages given above. So, a contract of insurance has been defined to be a contract of indemnity. 14 *R. C. L.* 839-841; 16 *Am. & Eng. Encyc. of Law,* 840; *Bonding Insurance v. Oliner,* 139 Md. 410; *Palatine Insurance Co. v. O'Brien,* 107 Md., at page 355. It will be seen from what we have said that the legal effect and meaning of the word "indemnify" when used in the policy considered in the *Cosgriff* case, and the word "insure" used in the present case, are identical, and the decision in the *Cosgriff* case is controlling as to this phase of the present case.

The appellee contends that clause 5 of the policy, under "Insolvency Provision," which reads: "The insolvency or bankruptcy of the assured hereunder shall not release the company from the payment of damages for injuries sustained or loss occasioned during the life of this policy, and in case execution against the assured is returned unsatisfied in an action brought by the injured, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person or his or her personal representative against the company under the terms of the policy for the amount of the judgment in the said action, not exceeding the amount of the policy"; is a separate independent promise or undertaking on the part of the company to pay the amount of the judgment, to the extent of the amount of the policy, to the injured party, provided the return of the sheriff upon an execution issued upon the judgment is

unsatisfied by reason of the insolvency or bankruptcy of Price. The correctness of this contention is denied by the appellant. The decision as to which of these contentions is correct must turn upon the question: Do the words "insolvency or bankruptcy," as employed in this clause of the contract, mean the inability of Price to meet his financial obligations, or do they mean that Price must have been adjudicated an insolvent or bankrupt? Argument can be advanced in support of either of these contentions, but we think, when the whole policy is considered, together with the history of and purpose intended to be accomplished by the inclusion of this clause in the contract, the former contention is correct, and the term "insolvency or bankruptcy" must be held to have reference to the actual financial inability of the insured to pay the judgment rendered against him, rather than an adjudication of insolvency or bankruptcy by a court of competent jurisdiction. The true intent and purpose of this provision inserted in the policy, and forming a part of the contract between the insurance company and the insured, is that if a third party obtains a judgment against the insured, under the terms and conditions set forth in the policy, and that judgment is uncollectible by reason of the fact of the insured's insolvency or bankruptcy, then and in that event the company agrees that an action may be maintained against the company by the injured party. The insolvency *vel non* of the insured is a fact to be established like any other fact necessary for the plaintiff's recovery, and when so established concludes the right of the injured party to be paid by the insurance company. It will be found that in the early policies in this class of cases there was no such clause, and it was later inserted to meet the requirements of the statute of the State of New York, which provided that the insolvency or bankruptcy of the insured would not relieve the company from payment. In the case of *Miller v. Union Indemnity Co.*, 209 App. Div. 455, 204 N. Y. Supp. 730, the court construed and interpreted this clause and reached a conclusion in accordance with the views herein expressed. To the same effect see *Berry on Automobiles* (4th ed.), sec. 1817, where

the author, upon the authority of *Miller v. Union Indemnity Co., supra,* states: "Within the meaning of a statute providing that the insolvency or bankruptcy of an insured shall not relieve the liability insurer, the word 'insolvency' is not confined to judicially declared insolvency but is given its usual broad meaning of general financial irresponsibility." A stricter construction would in many cases defeat the provisions of the contract of insurance. Under the provisions of the national bankruptcy law, certain designated persons are not the subject of involuntary bankruptcy, and if the insured, under a policy such as in this case, belonged to that class and did not voluntarily apply for bankruptcy adjudication, such failure would render nugatory the provisions of the clause now under consideration. It was clearly not the intention of the parties to the contract to make such a result possible, and it would be illogical to place such a construction upon the language employed as would require a judicial determination of insolvency or bankruptcy as a condition precedent to the right of recovery. Where it is a controverted question, we do not wish to be understood as deciding that the return of *nulla bona* by the sheriff to a writ of execution, standing alone, is sufficient to establish the insolvency or bankruptcy of the insured, as that term is used in the policy here considered, but that when such a return is made by the sheriff the question of insolvency or bankruptcy remains a fact to be proven by competent evidence. In this case, in addition to the sheriff's return of *nulla bona,* the judgment debtor Hugh R. Price testified that he was unable to pay the judgment, and this was not denied by the defendant.

The remaining question to be determined is whether the evidence offered by the appellant and which, after objection by the appellee, was rejected by the court, should have been admitted as a defense to any recovery by Price, and therefore by the appellee, because of a violation by Price of that clause of the contract which required him to co-operate in the defense of the suit brought against him by the appellee. This clause of the policy provided: "Whenever requested

by the company the assured shall aid in securing information, evidence, and the attendance of witnesses in effecting settlements and in defending suits hereinbefore referred to. The assured shall at all times render to the company all reasonable co-operation and assistance." The evidence offered by the appellant to show a violation of this provision of the policy by Price was the testimony of the appellant's general counsel in regard to conversations between Price and himself on the day of the trial, a letter written by the general counsel to Price and handed him during the progress of the trial, the written statements of each of the occupants of the car at the time of the accident, obtained and witnessed by an adjuster of the appellant shortly after the happening of the accident, as to the cause thereof, the offer to prove by the said adjuster that Price had said "that although suit was against himself and against the United Railways, he, Price, was only brought in as a matter of form and there was to be no attempt to hold him, the only attempt was to be to hold the United Railways," and the offer to prove by J. Marion Fountain, claim manager of the appellant for the district of Maryland, that "there were negotiations looking to a settlement and a certain figure was demanded and of that amount the United Railways offered to pay so much, and the question was whether the United States Fidelity & Guaranty Company would contribute anything towards the settlement, because of the representations that had been made to it by Mr. Price and by Mrs. Williams, and by Mr. Williams and Mrs. Price, that the accident was in no way due to the fault of Mr. Price, that he had been driving the car in a prudent, careful manner that night, and the accident was due entirely to the negligence and the fault of the United Railways, and that therefore the appellant refused to make any contribution to a settlement." All of the exceptions reserved, other than that relating to the prayers which we have hereinbefore passed upon, related to the exclusion of this testimony, offered by the appellant for the purpose of proving a violation of the co-operation clause of the policy. We are of the opinion that under such a provision the insured is bound in good

faith to render assistance in the trial of the suit and in making every legitimate defense thereto.

In 31 *Corpus Juris,* p. 460, sec. 60, it is said: "Where the indemnitor is notified of the pendency of an action against the indemnitee in reference to the subject matter of the indemnity, and is given an opportunity to defend such action, the judgment in such action, if obtained without fraud and collusion, is conclusive upon the indemnitor as to all questions determined therein which are material to recovery against him in an action for indemnity brought by the indemnitee; and this rule is sometimes expressly prescribed by the indemnity contract, and in some jurisdictions by statute." Or, as the rule was stated in *Sweet v. Atkinson,* 191 Iowa, 645: "Where an action for damages is brought against the party secondarily liable and he gives notice of the pendency thereof to the person primarily liable, informing him that he will look to him for contribution or reimbursement, and requesting that he make the defense, a judgment rendered against the party secondarily liable, the two not being *in pari delicto,* is conclusive on the one primarily responsible." And in the fourth edition of *Berry on Automobiles,* p. 1607, sec. 1886, it is stated: "An insured may lose the benefit of his policy by a violation of the provision requiring him to aid in effecting settlement and in securing evidence for the defense of suits, etc. If he refuses to allow a fact of substantial defense to be pleaded and relied on in defense, he may thereby lose his rights under the policy. But this is not true as to a matter which, as a matter of law, constitutes no defense. Where the insured refused to permit the defense of contributory negligence and there was sufficient evidence to go to the jury on that question, he was properly found to have violated the terms of his policy," the author citing in support of the rule, *Collins' Executors v. Standard Accident Insurance Company,* 170 Ky. 27. And in 14 *R. C. L.* 63, sec. 21, it is said: "It should also be noted that if a person enters into a contract of indemnity whereby he expressly agrees to become responsible for the result of litigation, or if by operation of law such a responsibility is cast

upon him without any agreement, he will, in the absence of fraud or collusion, be conclusively bound by the judgment rendered."

In the case of *Anderson v. Maryland Casualty Co.,* 123 Md. 67, where the question for decision was whether the insurer was liable for costs of suit, including counsel employed by the indemnitee, after a letter had been written to the indemnitee by the general counsel for the insurer, in which it was stated that the indemnitee seemed to be in sympathy with the plaintiff in the case and requesting it to employ its own counsel, as matters might develop in the course of the trial which would compel counsel for the indemnitor to withdraw from the case, the court, speaking through Judge Urner, said: "The obligation of the insurer to defend at its own cost was not qualified, restricted or discharged because of its mere opinion or belief that the insured was acting in prejudice of a legitimate defense against the liability covered by the policy. Before the vested contractual rights of the party entitled to the indemnity can be held to have been properly disregarded or disturbed on such a ground, it must appear by affirmative proof that the acts alleged to have been prejudicial were in reality committed."

Without setting out the testimony embraced in these exceptions, it is sufficient to say that in our judgment it is not sufficient to show fraud or collusion between Price and the appellee, but the only legal effect of it would be to tend to show a belief on the part of the counsel of the appellant that Price was not acting in entire good faith. The record does not disclose any act of Price which had or could have had any effect upon the jury which induced them or in any way caused them to render the verdict against himself. There is no evidence in the record that Price refused to testify in his own defense or that his testimony varied in any manner from the statement which he had previously given to the appellant as to the manner and cause of the accident. The single effect of the court's admitting the testimony of the appellant would have been to indicate that, from conversa-

tions had between the appellant's general counsel and Price on the morning of the trial, the general counsel and the appellant concluded that Price was hostile to their interest and was in collusion with the plaintiff in that suit. Even though this evidence should be sufficient for that purpose, the fact that the general counsel, from Price's conversation and actions, so concluded, would not of itself be admissible as tending to prove that Price had failed to co-operate. We therefore find no error in the rulings of the lower court on the testimony.

The effect of this policy is to create three distinct contractual obligations by the insurance company. First, it agrees with Price, the insured, to insure him against loss arising or resulting from claims upon him for damages in consequence of an accident. Second, in addition to the above, it agrees with the insured to pay him the expenses incurred in defending any suit, also the interest on any judgment within the limits of the insurance, and any costs taxed against the insured on account thereof. Third, it agrees that the injured party may maintain an action against the company under the terms of the policy for the amount of the judgment recovered by her against Price, not exceeding the amount of the policy, provided she is unable to collect the amount of the judgment because of Price's insolvency or bankruptcy.

We hold that there is no legal distinction between this policy and the one passed upon in the *Cosgriff* case, *supra*, in respect to the company's liability to Price, and, therefore, it being an insurance against loss, the company is not liable to Price for the amount of the judgment recovered against him by the appellee; that by the independent clause of the policy the company is liable to Price for the amount of the costs and interest on the judgment from the date of its rendition, and the appellee is entitled to recover these amounts from the appellant in this action of attachment; that the insolvency of Price having been proven, the appellee is entitled under the insolvency clause of the policy to maintain an action against the company under the terms of the

policy for the amount of the judgment recovered by her against Price, not exceeding the amount of the policy; and that the appellee cannot recover the amount of the judgment against the appellant as garnishee of Price, for the reason that the appellant is not indebted to Price in the amount of the judgment unless and until Price has suffered loss by payment of the judgment.

It will be seen from the views herein expressed that our conclusion is that there was error in granting the prayer of the appellee and in the verbal instructions given by the court below and in rejecting the appellant's prayer. For these reasons the judgment must be reversed.

> *Judgment reversed, and case remanded, that a judgment may be entered in accordance with this opinion; with costs to the appellant.*