STATE, *ex rel.* TRAVELERS INDEMNITY Co. v. W. V. KNOTT, as Insurance Commissioner.

153 So. 304.

155 So. 115.

Division B.

Opinion Filed March 2, 1934.

*Francis P. Whitehair* and *Hull, Landis & Whitehair,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *Robert J. Pleus,* Assistants, for Respondents.

*Waller & Pepper,* as *Amici Curiae.*

BUFORD, J.—The Travelers Indemnity Company proposed to issue a policy of indemnity insurance containing the coverage clauses known as clauses A and B, in the following language:

(A) "To pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, accidentally sustained by any person or persons and caused by the ownership, maintenance or use of the automobile; and

(B) "To pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of

accidental injury to or destruction of property, including the loss or use thereof, caused by the ownership, maintenance or use of the automobile;"

The State Treasurer as ex officio Insurance Commissioner declined to permit the insurance company to issue the policy, without the insurance company would first deposit with the State Treasurer as ex officio Insurance Commissioner bonds of the United States or bonds of some State of the United States which amount according to their market value to $75,000.00 in compliance with the provisions of Section 4339, R. G. S., of Florida, as amended by Chapter 12321, Acts of 1927, appearing as Section 6302, C. G. L., of Florida.

Relator instituted original mandamus proceedings in this Court to coerce the State Treasurer as ex officio Insurance Commissioner, to permit the respondent to issue the policy without making the deposit above referred to.

Section 4329, R. G. S., 6292, C. G. L., provides as follows:

"No surety company, whether incorporated under the laws of this State or of any other State or Country, nor its agents, either directly or indirectly, shall transact any·surety business in this State or procure or secure applications for suretyship upon the bonds of any person or corporation, unless such company has first obtained a certificate of authority from the State Treasurer, and before obtaining such certificate such company shall furnish the State Treasurer with a statement, under oath of the president and secretary of the company, which statement shall conform to the form of statement from time to time adopted by the National Convention of Insurance Commissioners and contain such other information as the State Treasurer shall reasonably prescribe."

Section 6302, C. G. L., being Section 4 of Chapter 12321, Acts of 1927, provides in part as follows:

"Companies herein described, chartered by this State, or other States or foreign Governments, now doing business in this State, or hereafter doing business in this State, which offer or undertake to become surety upon any bond, or surety contract, before being accepted as surety thereon, shall be required to deposit with the Treasurer of this State bonds of the United States, or bonds of any State of the United States, and which amount according to their market value, to seventy-five thousand dollars which bonds shall be receipted for by the State Treasurer and held or deposited by him."

The remainder of this section has no application to this case.

Now, the sole question for us to determine is whether or not under the provisions of the sections of the statute last quoted the relator must deposit bonds of the value of $75,000.00 before it could lawfully issue the policy which it seeks to issue.

If this is a surety bond or surety contract then the relator must deposit this amount of bonds with the State Treasurer, but if it is not a surety bond or a surety contract, it is not required to do so, it having complied with other insurance laws of the State applicable to that sort of business which it transacts.

Respondent relies with confidence on the opinion and judgment of this Court in the case of State, *ex rel.* Union Indemnity Co. v. Knott, State Treasurer, in which opinion was filed May 25, 1932, reported 143 Sou. 221.

It must be borne in mind that the opinion in that case was written with the facts in that case in view. It was shown there, as is stated in the opinion, that New York Indemnity Company had deposited bonds in the value of $75,000.00 with the State Treasurer as required by Section

6302, C. G. L., of Florida, and that pursuant to the depositing of the bonds it had written a certain surety contract on the application of Florida Motor Lines, and by that contract it assumed certain liabilities which had been later assumed by Union Indemnity Co. The contract of New York Indemnity Co. was not all included in the written policy but a part of its contract and that part which made it a surety contract arose from statute. Chapter 14764, Acts of 1931, in Section 6 thereof, provides in part:

"The Commission shall, at the time of granting a certificate or permit to any auto transportation company for transporting persons or property, fix and determine the amount of the bond to be given by the applicant for the protection in case of passenger vehicle of the passengers and baggage carried in said vehicle and of the public against injury caused by negligence of the person or corporation operating the said vehicle, and in case of the vehicle transporting freight, for the protection of said freight so carried if in common carriage, and of the public against injuries received through negligence of the person or corporation operating said freight-carrying vehicle; and it shall be the duty of the appellant to procure and file with the Commission the said bond for liability and property damage, including loss of baggage when same has been checked in accordance with the rules prescribed by the Commission, giving the said bond or bonds in a surety company authorized to do business in the State of Florida, or deposit, in lieu of said surety bonds, bonds of the United States Government or of any city or county in the State of Florida approved by the said Commission. The said bonds shall be conditioned to indemnify passengers and the public receiving personal injuries by the act of negligence, and for damages to property of any person other than the assured;

and such bonds shall contain such conditions, provisions and limitations as the Commission may prescribe, and said bonds shall be payable to the Governor of the State of Florida, or his successor in office, and shall be for the benefit of and subject to action thereon by any person or persons who shall have sustained an actionable injury protected thereby, notwithstanding any provision in said bond to the contrary, and every bond or insurance policy given shall be conclusively presumed to have been given according to and to contain all of the provisions of this Act."

The statute in that case was as much a part of the contract and was as binding upon the parties as if its provisions had been written into the agreement signed by the parties, but here we have a different situation.

In this case the relator proposed to write a personal indemnity policy in which it proposed to agree with the insured that it will pay on behalf of the insured all sums which the insured may under certain conditions become obligated to pay. It creates no liability to third persons and constitutes no cause of action upon which a third person could maintain a suit against the insurer. This is a liability insurance and not a surety contract. The definition of liability insurance contained in 36 C. J. 1056 is as follows:

"Liability insurance is that form of insurance by which insured is indemnified against loss or liability on account of bodily injuries sustained by others, or in a broader sense, against loss or liability on account of injuries to property."

Following this definition, the law of liability insurance is treated in that same volume.

In 50 C. J. 316, we find the following:

"The term 'surety company' is one ordinarily applied to a corporation organized for the purpose of, or empowered by its charter to engage in, the business of becoming a

surety upon bonds and undertakings. By statute, provision is frequently made allowing a surety company, authorized under the law of the State to enter into such an obligation, to become a surety upon bonds required by law, and the validity of such statutes has been upheld. So it has been held within the legislative power to authorize a corporation to become a sole surety upon bonds, although in the case of natural persons as sureties two or more sureties may be required, or to authorize certain officers of trust who may be required by law or by order of court to give bonds to include as' part of their lawful expenses in executing the trust such reasonable sums as they may have paid to a company authorized by the law of the State to do so, for becoming a surety thereupon. Where the surety company is, by statute, given all the rights of personal sureties' and made subject to all the liabilities of such, it is no more within the authority of the courts to deny such corporations the rights thus accorded than it is' to relieve them of the liabilities imposed. A surety company having authority to make bonds may file the bonds with the officer to whom they are given. The court must presume that an act author- ized by the directors of a surety company was within the company's power. The business of corporations organized for the purposes of profit in becoming the sureties for the performance of contracts' of various kinds, is largely in the nature of insurance, and where such a company is organized under the provisions of statutes providing for the organiza- tion of insurance companies, it is to all intents and purposes an insurance company."

And, following this, the writer discusses the law of surety companies and surety policies as distinguished from other character of insurance.

We might cite a great many cases from other jurisdictions

bearing on the point here involved, but it appears to us that having differentiated this case from that of Union Indemnity Co. and referred to the controlling statutes, there is little more to be said.

In Royal Indemnity Co. v. Knott, 101 Fla. 1495, 136 Sou. 474, we pointed out the distinction between an indemnity contract and a contract of suretyship, and there we said:

"The essential distinction between an indemnity contract and a contract of guaranty or suretyship is that the promissor in an indemnity contract undertakes to protect the promissee against loss or damage through a liability on the part of the latter to a third person, while the undertaking of a guarantor or surety is to protect the promissee against loss or damage through the failure of a third person to carry out his obligation to the promissee."

See also American Employers' Liability Ins. Co. v. Fordyce, 62 Ark. 562, 56 Am. St. Rep. 305, 36 S. W. 1051; Fidelity & Casualty Co. v. Fordyce, 64 Ark. 174, 41 S. W. 420; Stevens v. Penn. Casualty Co., 135 Mich. 189, 97 N. W. 686; Akron Lbr. Co. v. Fidelity & Casualty Co., 63 Minn. 286, 30 L. R. A. 689, 65 N. W. 353; Fritchie v. Miller's Penn. Extract Co., 197 Pa. 401, 47 Atl. 351; Klotzbach v. Bulldog Auto F. Ins. Assn. (Mo.) 267 S. W. 39; Ross v. American Employers' Liability Ins. Co., 56 N. J. Equity 41, 38 Atl. 22; Fenton v. Fidelity & Casualty Co., 36 Ore. 283, 48 L. R. A. 770, 56 Pac. 1096; London & S. Indemnity Co. v. Cosgriff, 144 Md. 660, 125 Atl. 529.

It appears to us that the contract proposed to be issued is a contract of simple indemnity and does not constitute either a surety bond or a surety contract and, therefore, it apearing that the relator has complied with all laws of this State which it is required to comply with to entitle it to write the proposed contract, it should be permitted to do so

without complying with that section of the statute requiring the deposit of $75,000.00 in bonds with the State Treasurer to entitle it to engage in the business of writing surety bonds or surety contracts in Florida.

The peremptory writ of mandamus should issue, and it is so ordered.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., concurs in the conclusion.

PER CURIAM.—This cause is now before us to be heard upon a motion to quash the return of respondent to a peremptory writ of mandamus and on demurrer to the return to the peremptory writ of mandamus.

It is contended here that the peremptory writ shows that the respondent has gone beyond the commands of the peremptory writ in issuing a certificate to the relator authorizing the relator to issue insurance policies or indemnity contracts as required by the command of the peremptory writ by including in the certificate the following language, to-wit:

"This certificate does not authorize the issuance of fidelity or surety bonds, or public liability policies under Chapter 14764, Laws of Florida, Acts of 1931, or public liability policies to third persons, or constituting a cause of action upon which a third person could maintain a suit against the insurer."

We find nothing in the language quoted which is in conflict or which extends or limits the certificate required to be issued by the peremptory writ. This language may be considered merely cautionary and inserted in the certificate for the purpose of precluding any misapprehension, misconstruction or misapplication of the terms of the certificate.

The relator applied to this Court for a writ of mandamus

to coerce the respondent to issue a certificate authorizing and allowing it to issue an indemnity policy of the character which is permitted by the certificate issued as shown by the return and no other.

For the reasons stated, the motion to quash is denied and the demurrer is overruled. It is so ordered.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur.

DAVIS, C. J., and TERRELL, J., concur in the opinion and judgment.