Argued September 9; affirmed September 29; rehearing denied
December 8, 1936

## AVERILL *v.* HOLMAN

(60 P. (2d) 968, 62 P. (2d) 939)

In Banc.

*Moe M. Tonkon* and *Calvin N. Souther,* both of Portland (Vinton, Marsh & Marsh, of McMinnville, and Wilbur, Beckett, Howell & Oppenheimer, of Portland, on the brief), for appellant.

*James L. Conley,* of Portland (Carson & Carson, of Salem, on the brief), for Clark and Conley.

*C. O. Fenlason,* of Portland, for Sherman J. Frank.

*Andrew Koerner,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for Standard Oil Co. of California.

BAILEY, J.  The Federal Surety Company, a foreign corporation organized in the state of Iowa, was in October, 1929, licensed by the state of Oregon to write in this state all lines of insurance permitted by its charter, except surety and fidelity bonds. It

immediately engaged in casualty insurance business in Oregon. Thereafter, on April 1, 1930, it was licensed to issue surety and fidelity bonds in this state, and in order to engage in that line of business deposited with the state treasurer $25,000 in Liberty bonds.

In the early part of 1931, because of its impaired financial condition, it ceased to do business in Oregon, and in September of that year a receiver and liquidator was appointed for the company in its home state. An ancillary receiver in Oregon was appointed by the circuit court of the state of Oregon for Multnomah county.

Pursuant to § 46-139, Oregon Code 1930, as amended by chapter 43, Oregon Laws, Second Special Session, 1933, A. H. Averill, as insurance commissioner of the state of Oregon, in September, 1934, filed suit in Marion county against Rufus C. Holman, state treasurer, as defendant. The complaint alleges that the Federal Surety Company was authorized to transact business as a surety company on April 1, 1930, and that said company deposited with the state treasurer bonds "upon the condition that said bonds should be held in trust for all holders of the obligations of said Federal Surety Company, to remain with said state treasurer in trust to answer any default of said company as surety upon any such obligation established by final judgment upon which execution might lawfully be issued against said company". This pleading further alleges the insolvency of that corporation, the appointment of a receiver in its home state and the appointment of an ancillary receiver in Oregon, and avers that there are numerous claims against said deposit. The prayer of the complaint is that an order be made fixing the time, place and manner of filing claims against said deposit and that upon the final hearing the court determine what claims, if any, are entitled to be paid out of the

funds realized from securities deposited by the Federal Surety Company with the state treasurer.

An order was thereupon made by the court pursuant to the prayer of the complaint, providing for the publication of notice to present claims and requiring that all such claims be in writing duly verified by the respective claimants and that they contain a "clear and definite statement of such facts as will enable the insurance commissioner to determine the amount of same and whether they are payable out of said deposit".

Pursuant to the notice so published, B. Underdahl filed his claim with the insurance commissioner, in which claim he stated that he had purchased from the Liberty Insurance Company of Dayton, Ohio, a public liability policy protecting him against direct loss and expense growing out of or resulting from claims against him for damages arising out of the occurrence of any accident during the one year covered by such policy, for which he might be legally liable by reason of the ownership, maintenance or use of a certain designated automobile; that during said period an accident occurred due to the operation of said automobile; that later a judgment was entered against him, which together with the cost of defending said suit totaled $6,458.91; and that he had been forced to pay the amount of said judgment and expenses. The claim then contains this further statement:

"That about the time of the trial of said cause the Liberty Insurance Company of Dayton, Ohio, went into the hands of a receivership and all the insurance carried in said company was reinsured by the Federal Surety Company of Davenport, Iowa; that said Federal Surety Company of Davenport, Iowa, has likewise gone into the hands of the receiver and that there is now on deposit with the state treasurer of the state of Oregon, and subject to your disposition, a large sum of money

which had been deposited with you and the state treasurer by the Federal Surety Company; that I hereby file this claim with you against said money on deposit with the state treasurer and hereby state that all the said moneys above set forth have been expended by me in the defense of said case and in payment of said judgment.''

After the institution of this suit E. W. Clark, insurance commissioner for the state of Iowa, as receiver and liquidator of Federal Surety Company, and James L. Conley, as ancillary receiver of Federal Surety Company for Oregon, were granted leave to intervene and become parties to the proceeding, whereupon they filed a joint answer, the allegations of which are not material here except in so far as they oppose the allowance of the claim of B. Underdahl.

Upon the expiration of the time for filing claims with him, the insurance commissioner made and filed with the court his report, in which he recommended that certain claims be allowed and others denied. Among those which he recommended to be disallowed was that of B. Underdahl, which, the commissioner set forth, was one for the amount paid by that claimant as shown in his statement. The commissioner further remarked:

''The basis of the claim is a policy of casualty insurance issued to claimant by Liberty Insurance Company of Dayton, Ohio, the accident occurring on September 10, 1930. It is alleged that about the time of the trial of the said cause the Liberty Insurance Company of Dayton, Ohio, went into the hands of a receivership and all of the insurance carried by said company was reinsured by the Federal Surety Company of Davenport, Iowa. This claim is not proved to the satisfaction of plaintiff herein, for the reason that it does not arise under a surety bond issued by Federal Surety Company.''

No evidence appears to have been introduced in the circuit court in support of, or in any way concerning, the claim of B. Underdahl, and the final order of the court disallowing that claim is in the following language:

"It is hereby further ordered, adjudged and decreed that the following claims are not entitled to be paid out of said deposit of securities of Federal Surety Company now held by Rufus C. Holman, state treasurer, pursuant to § 46-139, Oregon Code 1930, and that each and all of said claims and any part thereof are barred from payment out of the proceeds of said deposits: * * *

Exhibit 15. B. Underdahl ........................... $6,458.91.''

At the second special session of the legislature in 1933, § 46-139, *supra,* was amended by chapter 43 of the laws of that session so as to provide the procedure to be followed in disposing of money or securities on deposit with the insurance commissioner or state treasurer, belonging to insurance companies which have become insolvent. This amendment, as far as material here, is as follows:

"Whenever any such company which has deposited money, securities, or a surety bond or bonds with the commissioner or state treasurer shall have become insolvent, the commissioner shall file a bill in the circuit court of the state of Oregon for the county of Marion for the benefit of the state of Oregon, and of all claimants having valid claims against such deposits. The state treasurer shall be a party to the suit and such deposits shall be distributed by said court in settlement of claims originating in Oregon for the payment of which such deposits were made. Such deposits shall be apportioned and paid ratably by the commissioner to all claimants whose claims against such company have been proved to the satisfaction of the commissioner and have been approved by said court. Said claims shall be in such form as the said court shall require,

and notice of the time, place and manner of the filing thereof shall be given by the commissioner by publication in a newspaper printed and published in the most populous county in the state.''

As to all insolvencies occurring six months or more prior to the taking effect of that act notice is required to be published at least once every two months for a period of six months, and for all insolvencies occurring less than six months prior to the taking effect of the act notice is to be published in like manner for one year.

The procedure outlined by the foregoing statute was followed in this instance. It will, however, be noted that the legislature did not attempt to prescribe each step which was to be taken by the claimant, the commissioner and the court. In the case at bar, after the time in which to file claims had expired the commissioner made his recommendations to the court, as above stated, and the court on January 15, 1935, made an order approving certain claims and disallowing others. There were three claims disallowed, totaling a sum in excess of $19,000 and including the claim of Mr. Underdahl. In denying these claims the order of the court stated:

''It is hereby further ordered that the following claims are disapproved on account of insufficient evidence that they are payable out of the said deposit.''

This last-mentioned order of the court provided that ''all claimants or other interested persons shall, on or before the sixteenth day of February, 1935, make, verify and file with the clerk of this court such objections as they may have to this order, specifying the particulars of such objections''. It further stated that all right to file objections should terminate on February 16 and claims thereafter should be barred, and that

upon the expiration of the time allowed notice would be given to all persons filing objections and to all those to whose claims objections had been filed, "of the time and place when such objections would be heard and finally passed upon by the court". The order also provided that all claimants whose claims were disapproved by said order might make and file with the clerk, within the time for filing objections to the order, written application to the court for hearing upon said claims and an opportunity to submit further evidence in support of such claims.

The insurance commissioner served a copy of the order upon all persons who had filed claims with him, and on February 16, 1935, Underdahl filed objections to the order of January 15, therein stating that his demand should be allowed because a proper claim had been filed with the insurance commissioner and it was "a valid and proper claim against the surety deposit of the Federal Surety Company". Included with his objections was also an application to the court "for a hearing on said claim and opportunity to submit further evidence in support of the same".

The interveners on February 16 filed their answer hereinbefore mentioned, in which they stated their objections to the three claims disallowed, and acquiesced in the order of the court denying said claims.

On April 6, 1935, the court made an order fixing May 15 of that year as the time for hearing any objections to the claim which had on January 15 been allowed or denied, and requiring all those who had any such objections to appear at that time and "there present any argument or evidence that they may have in support of or in opposition to such objections, or in support of or in opposition to such claims". Notice of the date fixed for such hearing was, by order of the court, re-

quired to be given by the clerk of that court to all "claimants, objectors and applicants respectively and to said receiver and liquidator of Federal Surety Company, both by mail and publication in the Morning Oregonian", which notice was duly given and proof thereof filed.

The decree of the court from which this appeal was taken by Underdahl is dated November 19, 1935, and recites among other things that the court has "heard and considered the evidence presented in support of or in opposition to said objections", yet, as hereinabove stated, no evidence appears in the record before us, and if any evidence was introduced in the circuit court the record does not disclose what it comprised.

Sherman J. Frank and the Standard Oil Company of California, whose claims were allowed, the receiver and liquidator of the Federal Surety Company and its ancillary receiver for the state of Oregon are all here objecting to the allowance of the Underdahl claim, and all assert that there is no evidence in the record to support the statements made in the claim filed by Underdahl with the insurance commissioner. Neither the state treasurer nor the insurance commissioner has made any appearance in this court.

■ The first question which presents itself is whether or not the claim of the appellant, Underdahl, has been established. The law outlining the procedure in a case of this nature provides that the claim must be proved to the satisfaction of the insurance commissioner and approved by the court. Neither of these requirements has been met by the appellant. The report of the commissioner to the court does not admit the statements contained in appellant's claim. This report, after reciting certain matters which might be considered as facts established to the satisfaction of the commissioner,

proceeds to state that certain matters are "alleged" in this claim, clearly indicating that those allegations have not been proved by the claimant to the satisfaction of the commissioner.

Inasmuch as the court entered the preliminary order of January 15, 1935, denying this claim on the ground of insufficiency of evidence and granting to the claimant the privilege of applying for the right to introduce evidence in support of the claim, it is apparent that the court did not assume as established facts the statements made in the claim filed by Underdahl, and that denial of this claim was not based, as appellant asserts, solely on the ground that the demand did not arise directly out of a surety bond issued by Federal Surety Company. It would appear also that the appellant must so have understood the order of the court, for in his objections to the disallowance of his claim he asked permission to introduce further evidence.

█ Just what occurred May 15 or thereafter, at the hearing on the objections to the order of January 15, is not disclosed by the record and we can not assume that, as now insisted by the appellant, the facts stated in his claim were admitted by all litigants concerned, and considered by the circuit court as so admitted, and that the only question which was presented to that court was whether or not, upon the showing made in his statement, the appellant was entitled to a *pro rata* share of the deposit of securities made by the Federal Surety Company with the state treasurer.

The procedure adopted by the circuit court in the instant case is analogous with that prevailing in probate matters. The function performed by the insurance commissioner in passing in the first instance upon the claim submitted is similar to that of an administrator. When a claim is disapproved by the administrator, it

then becomes the duty of the claimant, if he desires to pursue his demand further, to have a hearing before the court on his claim, and at that time establish it by competent evidence. And so, in the case before us, when the commissioner recommended against the allowance of the Underdahl claim and the court entered an order disallowing it on the ground of insufficient evidence, it became incumbent upon Underdahl to prove his claim in much the same manner as would a claimant before a court in probate proceedings.

■ It was never intended by the amendment of the statute in 1933, above quoted in part, that a verified statement of claim, standing alone, would, upon rejection by the commissioner or attack by other claimants, be sufficient proof of the validity of the demand. It therefore follows, since the appellant's claim was disallowed by the circuit court and is not supported by any evidence before us, that the decree of the circuit court must be affirmed, and it is so ordered.

CAMPBELL, C. J., not participating.

---

Petition for rehearing denied December 8, 1936

### On Petition for Rehearing
#### (62 P. (2d) 939)

BAILEY, J. The appellant, B. Underdahl, has filed a petition for rehearing, a petition or motion for diminution of the record and a motion to modify our former opinion to provide that the cause be remanded with opportunity to appellant to present evidence in support of his claim.

■ In the motion for diminution of the record the appellant urges upon us that the proceedings on the final hearing in the circuit court were such as to lead him to

believe that the only question there involved was whether claims arising out of casualty insurance written by the insolvent insurance company were payable out of the deposit made by that company with the state treasurer as a condition of doing surety insurance business in this state. Because of such understanding on the part of appellant the transcript of proceedings on the final hearing in the circuit court was not made a part of the record on appeal to this court. A purported transcript of the proceedings had at that hearing is made a part of the motion for diminution of the record. The petition for a modification of our former opinion requests that if this court on a reconsideration of the matter should determine, from the record here or on the record as claimed by the motion for a diminution of the record, that the appellant had failed to establish his claim by sufficient proof, the cause be remanded, with an opportunity to appellant to introduce testimony in support of his claim.

The only ground on which the appellant asks a rehearing is that he is entitled to have his claim paid from the residue of the deposit with the state treasurer after the payment of claims against the insolvent insurance company based upon surety bonds written by that company. Assuming that the appellant is correct in his contention that he was under a misapprehension as to the position which would be taken by the respondents in this court with reference to the nature of the questions involved, and that for such reason he had neglected to present a full transcript of the proceedings before the trial court, nevertheless it would, in our opinion, be futile either to grant the motion for diminution of the record or to modify our former opinion. It may be conceded, in considering the petition and motions here involved, that the appellant established

his claim against Federal Surety Company arising out of casualty insurance either originally written or reinsured by that company. Such a liability on the part of Federal Surety Company, however, is not payable out of its deposit with the state treasurer. That deposit, as was held in *Earle v. Holman,* 154 Or. 578 (61 P. (2d) 1242), decided by this court November 5, 1936, is limited to surety insurance business.

It is true that in that case the claims growing out of surety insurance business filed against the deposit and allowed by the court greatly exceeded the amount of the deposit, while in the case at bar it would appear that there would be enough of the deposit remaining after paying the claimants on surety bonds to pay the appellant's claim. In support of his contention that he is entitled to share in such residue, the appellant cites and relies upon the following cases: *State ex rel. Union Indemnity Co. v. Knott,* 105 Fla. 569 (143 So. 221); *Kelly v. Knott,* 120 Fla. 580 (163 So. 64); *Snedigar v. New Jersey Fidelity & Plate Glass Insurance Co.,* 120 Fla. 596 (163 So. 71), and *Southern Pacific Co. v. Lion Bonding & Surety Co.,* — Tex. Civ. App. — (294 S. W. 599).

The case of *State ex rel. Travelers' Indemnity Co. v. Knott,* 114 Fla. 820 (153 So. 304, 155 So. 115), fully explains the case of *State ex rel. Union Indemnity Co. v. Knott,* supra, and holds that the opinion in that instance "was written with the facts in that case in view" and that the law then in effect in Florida required a motor transportation company, before receiving a certificate to do business, to give bonds to indemnify passengers and the public receiving personal injuries through any act of negligence on the part of the transportation company. Neither the facts nor the statutes of Florida involved in the two decisions of that jurisdiction just referred to have any application to the question now be-

fore us. The case of *Southern Pacific Co. v. Lion Bonding & Surety Co.,* supra, was explained in the opinion of this court in *Earle v. Holman,* supra, and nothing further need be said here concerning the decision in that case.

Both the appellant and the respondents seem to consider the case of *Kelly v. Knott,* supra, as deciding that claims growing out of surety bonds were given priority in payment out of the securities deposited by the insurance company as a condition to doing business in the state of Florida. What the Florida court appears really to have decided in that instance is, when interpreted in the light of the opinion in *Snedigar v. New Jersey Fidelity & Plate Glass Insurance Co.,* supra, that said securities were deposited as a trust fund for the "payment of all 'claims' against the defaulting or insolvent surety company, whether such claims arise out of surety bonds or surety contracts or not"; and that the primary, but not the sole, purpose of the deposit of securities with the state treasurer is for the "payment of claims, if any, that may have accrued against the deposited securities by reason of breaches of surety bonds or contracts of suretyship".

We are unable, in construing the language of the Florida statute, to reconcile the conclusions expressed in those two cases to the effect that the securities were deposited as a trust fund for the security of all claimants against the depositing company with the view that claims of common creditors are subordinated to the payment of claims that may have accrued against the deposited securities by reason of breaches of surety bonds or contracts of suretyship. The decision of the Florida court in *Kelly v. Knott,* supra, that the securities were deposited and held as a trust fund for local Florida creditors was reversed by the supreme court of

the United States in *United States v. Knott,* 298 U. S. 544 (56 S. Ct. 902, 80 L. Ed. 1321, 104 A. L. R. 741), where it was held that the claim of the United States to the fund was prior to that of any of the Florida creditors.

We adhere to our decision in *Earle v. Holman,* supra, to the effect that the deposit was made for the benefit of holders of surety insurance contracts and is not available, in this proceeding, for the satisfaction of other classes of claims against the insolvent insurance company. The petitions and motion herein are therefore denied.

CAMPBELL, C. J., not participating.