KELSAY AND UNSATISFIED CLAIM AND
JUDGMENT FUND *v.* STATE FARM
MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, ET AL.

[No. 283, September Term, 1965.]

*Decided May 26, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*William Walsh*, with whom were *William C. Walsh, Thomas B. Finan, Attorney General*, and *R. Randolph Victor, Assistant Attorney General* on the brief, for appellants.

*William H. Geppert* and *Hugh A. McMullen*, with whom were *Gunter & Geppert* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

On October 28, 1964, suit was instituted by Donald L. Kelsay and the Unsatisfied Claim and Judgment Fund (appellants here), seeking a declaratory judgment that Donald L. Kelsay (Kelsay) was insured under a policy of liability insurance issued by State Farm Mutual Automobile Insurance Company (State Farm) to August Edward Chenowith, and is entitled to coverage thereunder with respect to an accident in which Chenowith's daughter, Drinda K. Chenowith (Drinda) was killed. In the alternative, it was prayed that a declaratory judgment be given to the effect that any provision or provisions in said automobile liability insurance policy that excluded Kelsay as an insured are contrary to the Maryland financial responsibility law and thus void and of no effect. The declaration filed by the plaintiff-appellants alleged that there was a present and actual controversy between the parties because (1) in January 1964, August Chenowith, individually and as administrator of the estate of Drinda, and Bessie M. Chenowith, individually, filed two law suits in the Circuit Court for Allegany County claiming damages for the injuries to Drinda and damages for her death, (2) that Kelsay was one of the defendants in those suits, (3) that State Farm had denied that Kelsay was insured under its policy for the purposes of those suits, and (4) that if State Farm did not insure Kelsay against bodily injuries to Drinda then the Unsatisfied Claim and Judgment Fund would

be required to defend Kelsay and satisfy any judgment, up to the statutory maximum, that might be obtained against him. A hearing was held on this matter before Judge Harold E. Naughton, and in an order dated April 15, 1965, the judge ruled that Kelsay was a person insured under the endorsement to the insurance policy but that State Farm was not liable for damages to Drinda under coverage A. This is an appeal from that order.

At the hearing the following undisputed facts were adduced: On December 7, 1963, Kelsay was operating a 1958 Ford sedan on State Route No. 36 in Allegany County, and Drinda, daughter of appellees August and Bessie Chenowith, was a passenger in the vehicle. The automobile was involved in a collision with another vehicle and Drinda was fatally injured. At the time of the accident Kelsay was driving the automobile at the request and with the permission of Drinda. Although the car was titled in the name of August Chenowith, the latter testified that he had given it to his daughter Drinda, as a gift for her eighteenth birthday, some eighteen months before the accident occurred. At the time of the accident and at the time the insurance contract was issued, Drinda resided in La Vale, Maryland, with her mother, while her father, August Chenowith, lived in Cumberland, Maryland.

The questions presented on this appeal involve the interpretation of the insurance contract issued to August Edward Chenowith by State Farm. These questions are: (1) Was Kelsay an insured under the contract by virtue of Code (1957), Article 66½, Section 131 (a) (3); (2) was Drinda "the insured" within the meaning of the policy's exclusion clause so that Kelsay was not afforded coverage for damages resulting from her death; (3) assuming that Drinda was excluded, is such an exclusion contrary to the Maryland financial responsibility law and thus void and of no effect.

The policy to be here interpreted was issued on June 16, 1963, by State Farm and on the first page of the policy it was declared that August Chenowith was the "named insured" and that Drinda was the "person insured" under coverage S.[1] The

1. The only question with which we are concerned in this opinion is whether Drinda was afforded coverage under coverage A for

expiration date was December 16, 1963, and the automobile covered was the 1958 Ford sedan in which Drinda was riding when she was fatally injured. In the fourth declaration of the policy it was stated that the named insured, August Chenowith, was the sole owner of the vehicle.

Under the terms of the policy it was provided that the company obligated itself "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury [including death] sustained by *other persons,* and (B) property damage, caused by accident arising out of the ownership, maintenance or use, * * * of the owned automobile; * * *." (Emphasis added.)

It was further provided by one of the policy's exclusion clauses that the insurance did not apply under "coverage A, to bodily injury to *the insured* or any member of the family of the insured residing in the same household as *the insured*". (Emphasis added.)

Included in the policy was a section dealing with definitions and it was therein stated that:

"Insured—under coverages A, B, * * * the unqualified word 'insured' includes

(1) the named insured, and

(2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and

(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and

(4) any other person while using the owned automobile, provided the operation and the *actual use* of such

---

bodily injury, including death, arising out of Kelsay's alleged negligence. But under the policy State Farm also contracted to pay under coverage S, "the principal sum [$5,000] stated as applicable in the exceptions of the declarations in the event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided the death shall occur within 90 days from the date of such accident."

automobile are with the permission of the named insured or such spouse and are within the scope of such permission, * * *." (Emphasis added.)

In the endorsement on the policy it was agreed that the insurance afforded for Bodily Injury Liability and Property Damage Liability shall constitute proof of financial responsibility of the minor, Drinda, in accordance with the "provisions of Section 92 of Article 66½ of the Annotated Code of Maryland (1951 Edition), as amended, * * *." This section has been amended and is now Section 93 of Article 66½ of the Code (1957 Edition) and it requires minors to maintain proof of financial responsibility until they become twenty-one years of age. A policy is proof of financial responsibility when it meets the requirements of Section 131 of Article 66½. The last named section of Article 66½ has as one of its requirements that the policy

"shall extend to insure any person using or legally responsible for the use of any motor vehicle described in the said policy, when such use is with the permission of *the insured* person named in said policy." (Emphasis added.)

It was also provided in the same endorsement that "the insurance afforded by this endorsement applies only to the minor named below. The named minor was Drinda.

On this appeal both parties agree that the answer to the first question here presented (*i.e.,* whether Kelsay was an insured driver under the insurance contract by virtue of Section 131 (a) (3) of Article 66½) should be in the affirmative. In so agreeing both parties concede that Judge Naughton was correct in ruling that since this policy was offered as proof of financial responsibility under Section 131 of Article 66½ then that article must prevail over that portion of the endorsement which specifically states that the insurance afforded by the endorsement applies only to Drinda. Drinda was "the insured person named" for the purposes of Section 131 because the endorsement to the policy specifically afforded her coverage under the policy, and thus Kelsay became an insured under the policy by virtue of that section since he was driving the automobile with the permission of Drinda.

The parties, however, disagree as to whether Drinda was "the insured" within the meaning of the policy's exclusion clause, which precluded recovery under coverage A for bodily injury to "the insured." The appellees contend that Drinda met the definition of "the insured" as set forth in paragraph (4) of the policy's definition section, to wit: "any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, * * *." It is the appellants' position that Drinda did not fit within the above definition inasmuch as she was not using the automobile with the permission of the named insured (her father) because under the authority of *Selected Risks v. Miller,* 227 Md. 174, 175 A. 2d 584, the named insured, not being the "real owner" of the automobile, could not grant or withhold permission to use the vehicle.

Appellants' present contention that August Chenowith was not the "real owner" of the automobile contrasts sharply with the second paragraph in their declaration seeking a declaratory judgment, wherein it was alleged that:

> "At the time of the above mentioned accident, August E. Chenowith was the owner of the * * * 1958 Ford sedan, Chenowith had previously entrusted the care and operation of said automobile to his daughter, the said Drinda * * *."

In their answers to the above paragraph the appellees admitted the truth of the allegations contained therein, and it is thus far from clear that the plaintiff-appellants can now put at issue whether August Chenowith was the "real owner" of the automobile. But even if it be assumed that the plaintiff-appellants were merely alleging that August Chenowith was the record owner and made no statement of who was the "real owner," we find that unlike the situation presented in *Selected Risks,* here the named insured was the "real owner" of the vehicle and had the requisite control and custody of the vehicle to grant or deny permission for its use.

The factual situation extant in *Selected Risks* was as follows: An automobile was titled in the name of one Mrs. Eads because

her huband, Mr. Eads, was unemployed at the time of the purchase and resultingly could not obtain financing. Despite the titling, the car was paid for by Mr. Eads. Subsequent to the purchase, Mr. Eads became estranged from his wife and took the car to Birmingham, Alabama, and then later to his new address in Washington, D. C. Some five months after he had left his wife, an accident occurred while the automobile was being operated by one Hall with the permission of Mr. Eads, who was a passenger at the time. This Court therein held, at page 178, that Hall could not have been operating the automobile with the permission of the named insured (Mrs. Eads) under the terms of an omnibus coverage clause (very similar to paragraph (4) of the definition section here under discussion) because the named insured "must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission." Not having power to grant or withhold permission to Hall, it would follow, as pointed out by the appellants, that Mrs. Eads likewise did not have the power to withhold permission from her husband, the "real owner" of the car. See also *Melvin v. American Auto Ins. Co.,* 232 Md. 476, 479, 194 A. 2d 269, for a discussion of this same point.

But the case of *Selected Risks* is distinguishable from the instant one for two reasons. First, the testimony of August Chenowith that he had made a gift of the automobile to Drinda could well be said to mean no more than that he had entrusted the care and operation of the car to his daughter and to be but a colloquial manner of expressing the idea, which he expressed in a later part of his testimony, that Drinda had his continuous permission to use the car; and thus his testimony was not conclusive as to who was the vehicle's "real owner." This differs markedly from the situation in *Selected Risks* where it was undisputed that the named insured had absolutely no custody or control over the vehicle for some five months preceding the accident. Secondly, the named insured in the instant case paid for the car out of his own pocket whereas in *Selected Risks* the named insured was merely a conduit through which car payments were made by the ostensible permittee.

Under the circumstances of this case where the insurance policy specifically stated that the named insured was the vehicle owner, the named insured paid for the car, the car was titled in the name of the named insured, and the relationship was one of named insured to minor daughter, we hold that the named insured had sufficient control over the car so that he could have withheld permission from the user (Drinda) if he had so chosen. Drinda was thus "the insured" by virtue of the definition contained in paragraph (4) because she was using the car, at the time of the accident, with the permission of the named insured and by the terms of the policy she was thereby excluded from coverage under it for bodily injuries (including death) under coverage A.

Appellants' third contention is that if Drinda was excluded by the terms of the policy under coverage A then such a policy exclusion is void and of no effect because it is contrary to the requirements of the financial responsibility law.

As pointed out in the discussion of appellants' first contention, the endorsement affording coverage for Drinda, a minor, made the entire policy subject to Section 131 of Article 66½. Subsection (b) of Section 131 sets out various provisions which a policy may contain. Among them are several permitting exclusions of some risks; and exclusion of risk for bodily injury to "the insured" is not *expressly* permitted. But clause (5) subsection (b) of Section 131 does allow a policy of insurance which is offered as proof of financial responsibility to "contain any agreement, provision or stipulation not in conflict with or contrary to the provisions required in this article and not otherwise contrary to law." It is appellants' sole contention that because subsection (b) does not specifically state that all insureds under the policy may be excluded insofar as their own personal injury claims are concerned, then such a provision in the instant policy is void. Such a contention is untenable because, as stated by Chief Judge Brune, speaking for the Court, in *Citizens Co. v. Allied Co.,* 217 Md. 494, 505, 144 A. 2d 73, Section 131 (b) (5) "clearly precludes the inference that only provisions specifically stated in subsection (b) are permissible under" a policy of insurance issued under Section 131. In *Citizens Co.* it was also said that the Motor Vehicle Responsibility

Law was intended primarily for the protection of the public (p. 504) and so long as the rights of injured third parties are not adversely affected, the remedial purpose of the Act is neither defeated nor impaired by a given exclusion clause (p. 505). See also *Barrella v. Stewart,* 228 Md. 378, 386, 179 A. 2d 886.

In support of their third contention, the appellants cite but one case which it said to stand for the proposition that the exclusion clause, such as the one under consideration, is invalid. In that case, *Schenke v. State Farm Mut. Automobile Ins. Co., Etc.,* 246 Wis. 301, 16 N. W. 2d 817, a limitation of the omnibus coverage clause excluding liability thereunder for injury to or death of an additional insured was held invalid as being in conflict with the statutory provision that the coverage afforded the additional insured must be the same as supplied the named insured in the policy. That case is quite distinguishable from the case at bar because the *Schenke* case dealt with a specific statutory requirement and the Maryland statute does not contain such a requirement. Moreover, even if the Maryland law did so require, the case would be inapposite because the coverage afforded additional insureds under the Chenowith policy was the same as that afforded the named insured.

In Annot. 50 A.L.R.2d 131, the general rule in the country is stated to be that "in the absence of statutory provisions forbidding their inclusion, clauses providing that the coverage does not extend to liability for bodily injury or death of an insured have usually been held valid and effective to protect the insurer." To the same effect see 7 Am. Jur. 2d *Automobile Insurance,* Section 129, and cases cited at pages 448-49. We approve the above cited general rule and hold that the exclusion clause in the present policy is valid.

*Judgment affirmed. Appellants to pay the costs.*