## PENINSULA INSURANCE COMPANY
### *v.* HOUSER
\* \* \*
## HOUSER *v.* PENINSULA INSURANCE COMPANY, ET AL.

[No. 93, September Term, 1967.]

*Decided February 13, 1968.*

716

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Robert E. Kuczynski,* with whom were *Edwin H. Miller, Miller, Miller & Kuczynski,* and *Dallas & Seidel* and *Sheldon B. Seidel* on the brief, for Peninsula Insurance Company, appellant and cross appellee.

*Ernest V. Wachs,* with whom were *Wachs & Kreykenbohm* on the brief, for Ralph W. Houser, appellee and cross appellant; *J. Louis Boublitz,* with whom were *Boublitz, Colton & Broadwater* on the brief, for Allstate Insurance Company, appellee.

SINGLEY, J., delivered the opinion of the Court.

This case arises out of an automobile accident which occurred on 5 November 1964. The car involved was owned by Ralph W. Stottlemyer and was being driven by Verdon Francis Tritapoe. Ralph W. Houser, the appellee and cross appellant here (and plaintiff below), was a passenger. Houser, who was injured, obtained a judgment for $10,500.00 against Tritapoe in June of 1966 and in an endeavor to collect, laid an attachment by way of garnishment in the hands of Peninsula Insurance Company (Peninsula) and Allstate Insurance Company (Allstate) on the theory that Peninsula had insured Stottlemyer, the owner, and Allstate had insured Tritapoe, the driver. Peninsula filed a plea of *nulla bona,* on the ground that it had not insured Tritapoe; Allstate answered, admitting that it had insured Tritapoe, but claiming that its coverage was secondary to that afforded Stottlemyer by Peninsula.

On 14 March 1967, judgment of condemnation absolute was entered by the Circuit Court for Washington County in favor of Houser for $10,000.00 against Peninsula, with interest from 14 June 1966 together with one-half of the court costs in the personal injury case and the attachment case and for $500.00 with interest from 14 June 1966 together with the other half of the same court costs against Allstate. From this judgment, Peninsula and Houser appealed.

Three questions are presented by the appeal: 1. Was an attachment suit the proper proceeding? 2. Was Tritapoe, the driver of the Stottlemyer car, covered by the Peninsula policy? 3. Assuming that attachment lies, has Houser proved his case?

I

Peninsula challenges the propriety of the procedure followed by Houser who, after obtaining his judgment against Tritapoe, laid a writ of attachment in the hands of Peninsula as garnishee of Tritapoe. The parties concede that the practice of determining the existence of insurance coverage in this fashion has been recognized by custom, but Peninsula argues that it has never been sanctioned by this Court.

With this contention we cannot agree. Md. Rule G45 a provides that "[a]ny property, including a credit which has not matured * * * in the hands of another, may be attached" and Rule G47 a provides that "[a] writ of attachment by way of garnishment may be served upon a person having property or credits belonging to the defendant." The prior decisions of this Court have established that garnishment is, in essence, a suit by the debtor against the garnishee for the use and benefit of the attaching creditor, and that the rights of the creditor against the garnishee cannot rise above those of the debtor. *Messall v. Suburban Trust*, 244 Md. 502, 224 A. 2d 419 (1966); *Cole v. Randall Park Holding Co.*, 201 Md. 616, 95 A. 2d 273 (1953). A respectable majority of jurisdictions permit garnishment of an insurer by an injured person to compel payment of his judgment. *E. g.*, Appleman, *Insurance Law and Practice* (1942), § 4838 and cases cited in footnote 34; *Restatement of Judgments*, § 111, comment b. (1942). The principle was recognized in *U. S. Fid. Co. v. Williams*, 148 Md. 289, 129 A. 660 (1925)

718

where, in a well-considered opinion filed for the court, Judge Digges said at 299-300 :

"On the other hand, if the policy was a contract to indemnify against liability, from and after the time the liability of Price to the appellee was fixed and determined by a judgment in her favor, the appellant did owe Price the amount of that judgment to the extent of the sum fixed in the policy, and the amount so due and owing to Price was subject to attachment on the judgment obtained by the appellee. This is the law as determined by the weight of authority, and has been expressly so declared by this Court in *London and Lancashire Indemnity Co. v. Cosgriff*, 144 Md. 660, in which the opinion was delivered by the former Chief Judge. That case, like the present one, was an attachment case, and it will be well to remember, as pointed out by Judge Boyd, quoting from *Hodge & McLane on Attachment*, section 148, that the general rule is that the right of the attaching creditor to recover against the garnishee depends upon the subsisting right between the garnishee and the debtor in the attachment, and the test of the garnishee's liability is that he has funds, property or credits in his hands belonging to the debtor for which the latter would have the right to sue ; the plaintiff is subrogated, as against the garnishee, to the rights of the debtor, and can recover only by the same right and to the same extent as the debtor might recover if he were suing the garnishee. In other words, the appellee's right to recover under the attachment in this case depends upon and is controlled by the question of whether or not her judgment debtor, Price, could successfully maintain a suit against the appellant. If Price could compel payment under the contract to him, the appellee can recover ; but if the appellant, under the terms of the contract, has such a defence as would preclude recovery by Price, then and in that event there can be no recovery by the appellee."

The *Williams* case turned on another point, since the policy, by its terms, insured "against loss." In the case before us, however, the policy language indemnified against liability: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * *."

Under such circumstances, the procedure adopted by Houser to enforce his claim was proper. *Cf. DeMaio v. Lumbermans Mutual Casualty Co.*, 247 Md. 30, 230 A. 2d 279 (1967).

## II

The second question, whether the Peninsula policy covered Tritapoe, the operator of the Stottlemyer car, requires a recital of additional facts. The record shows that Stottlemyer, who was 19 years of age, filed an application for a policy of public liability and property damage insurance with Daly's Insurance Agency (Daly) in Hagerstown, Maryland, on 14 April 1964. Although the application was for a year and the premium was calculated on an annual basis, the Agency divided the coverage into two periods of six months each: the first from 14 April 1964 to 14 October 1964; the second, from 14 October 1964 to 14 April 1965. The application showed that insurance for the first period was to be placed, as in fact it was, with Peninsula, but no company was specified for the second six months. There was testimony that this was Daly's customary procedure; that at the end of six months, the policy would be renewed with the same company, or placed with another; and that this would have been done, had Daly not become insolvent.

On the day when the application was filed, Kenneth E. Work, an employee of Daly, sent to the Commissioner of Motor Vehicles Form JR-11 required by the Motor Vehicle Financial Responsibility Act (the Act), Maryland Code (1966 Repl. Vol.) Art. 66½, § 93, for the licensing of operators under 21 years of age. The JR-11 form was signed in Peninsula's behalf by Work. It referred to Peninsula Policy AC 3984, issued by Daly to Stottlemyer, and included the following paragraph:

"In the event of cancellation or non-renewal of such policy notice of such cancellation or non-renewal will be filed with the Commissioner of Motor Vehicles thirty

(30) days in advance of the effective date of such cancellation or non-renewal."

This paragraph was referred to in *Reserve Ins. Co. v. Duckett,* 240 Md. 591, 598 & n. 1, 214 A. 2d 754, 758 & n. 1 (1965), where this Court pointed out that Maryland Code, Art. 66½, § 142 dealing with proof of financial responsibility, which by its terms applies to notice of cancellation or annulment, has been administratively interpreted to include notice of expiration, with the concurrence of all companies qualified to do business in Maryland.

The application which Stottlemyer filed with Daly fixed the annual premium at $328.00 to which a monthly financing charge of $2.50 was to be added [1] and provided for an initial payment of $55.00 and 10 monthly payments of $27.30 each, plus the financing charge. Stottlemyer paid $57.50 to Daly at the time he filed the application and made 6 payments of $29.80 each to Daly's Acceptance Corporation, being the payments due in the months of May to October, inclusive, so that at the time of the accident on 5 November 1964, Stottlemyer had paid Daly a total of $236.30 which included $17.50 in financing charges. The true premium for the six months coverage commencing 14 April 1964 was $164.00.

On 13 May 1964, Daly closed its office in Hagerstown and on 3 July 1964, Peninsula wrote to Daly's Washington, D. C. office terminating its agency agreement, but no notification was sent by Peninsula to Stottlemyer. On 10 October 1964, Daly and Daly's Acceptance Corporation went into receivership, and shortly after 15 October 1964, Stottlemyer received a form letter from Work, which stated that Daly had "closed," and solicited a continuance of his business.

The accident involving Stottlemyer's car occurred on 5 November 1964, and on the following day, Peninsula sent to the Commissioner on form JR-12 notice of cancellation of Stottlemyer's coverage under Policy AC 3984, the policy written by

---

1. The premium was financed through Daly's Acceptance Corporation of Washington, D. C. Peninsula did not participate in this arrangement, and had received payment of the six months' premium less the commission.

Daly on 14 April 1964. Because of the 30-day notice provision in the JR-11 form, this cancellation was not effective until 9 December 1964.

The thrust of Peninsula's argument is that since Policy AC 3984 expired by its terms on 14 October 1964, Peninsula's failure to cancel the JR-11 filing resulted in continued coverage only for Stottlemyer, since the JR-11 was a certification of coverage of the *operator,* as distinguished from the coverage of the *owner* of the vehicle offered by the policy, and consequently accorded no protection to Tritapoe, the driver of the Stottlemyer car.

With this contention we cannot agree. The JR-11 form filed with the Commissioner of Motor Vehicles was a certification or proof that financial responsibility of the sort contemplated by § 130 of Art. 66½ existed. The insurer's liability was fixed by the policy, not by the certification or proof. Code (1967 Repl. Vol.) Art. 66½, § 131 (e) ; *Erie Insurance Exchange v. Gosnell,* 246 Md. 724, 230 A. 2d 467 (1967). If there is a conflict between any provision of a policy and the Act, the Act is paramount. *National Indem. Co. v. Simmons,* 230 Md. 234, 239, 186 A. 2d 595 (1962) ; *Keystone Mut. Cas. Co. v. Hinds,* 180 Md. 676, 679, 26 A. 2d 761 (1942). § 93 of Art. 66½ is not a statutory provision which has for its primary purpose the creation of substantive rights and liabilities, but is a recital of the requirements which must be met by a minor who wishes to obtain a Maryland driver's license. *Tsoy v. MacFarland,* 219 F. Supp. 220 (D. Md. 1963).

In the case before us, Stottlemyer needed the proof of financial responsibility required by the Act. Peninsula provided it, undertook to notify the Commissioner if the policy was cancelled or not renewed, and failed to do so. The negligence of Tritapoe, driving the car with Stottlemyer's consent, and with Stottlemyer as a passenger, was squarely within the terms of the policy.[2]

---

2. The pertinent terms of the policy issued by Peninsula are as follows:

"*Part 1—Protection against liability*
Coverage A—Bodily injury liability * * *.
To pay on behalf of the insured all sums which the insured

To permit Peninsula to contend that its contractual responsibility under the policy was one thing, and that when it certified to the Commissioner of Motor Vehicles that such a policy existed [3] and agreed to notify the Commissioner of non-renewal, it was talking about something else, would defeat the purpose of the Act, which was intended to provide funds to meet the needs of innocent victims of automobile accidents. *American Homeowners Ins. Co. v. Reserve Ins. Co.,* 264 F. Supp. 632 (D. Md. 1967) ; *Amalgamated Casualty Insurance Co. v. Helms,* 239 Md. 529, 212 A. 2d 311 (1965) ; *National Indemnity Co. v. Simmons,* 230 Md. 234, 186 A. 2d 595 (1962) ; *Keystone Mutual Casualty Co. v. Hinds,* 180 Md. 676, 26 A. 2d 761 (1942).

## III

Peninsula's final contention is that Houser has not proved his case, since there was no formal proof of the entry of judgment in the personal injury action, although Tritapoe referred to the verdict of $10,500.00 in his testimony, nor any evidence that the judgment had not been paid.[4] This omission should have been corrected before the entry of the judgment of condemnation absolute. Md. Rule G55 b; Md. Rule 648. *See, De Bearn v. De Bearn,* 119 Md. 418, 86 A. 1049 (1913) ; *Western Nat.*

---

shall become legally obligated to pay as damages because of: A. Bodily injury * * * caused by accident arising out of (1) the ownership, maintenance or use of the owned automobile * * *.

\* \* \*

Persons insured. The following are insureds under Part 1:
(a) With respect to the owned automobile,
(1) the named insured,
(2) *any person while using such automobile with the permission of the named insured * * * "* (Emphasis supplied).

3. Maryland Code (1967 Repl. Vol.), Art. 66½, § 131 prescribes the terms of a policy of insurance offered as proof of financial responsibility. Cf. Erie Insurance Exchange v. Gosnell, 246 Md. 724, 230 A. 2d 467 (1967); Kelsay v. State Farm Insurance, 242 Md. 528, 219 A. 2d 830 (1966).

4. There is a strong intimation to this effect in the record, however.

*Bank v. National Union Bank,* 91 Md. 613, 46 A. 960 (1900). Such testimony, however, can be offered on remand.

> *Reversed and remanded for the sole purpose of taking testimony as to whether a judgment had been entered in the personal injury case and not paid, in conformity with Rule 648, and upon the supplying of such proof, for entry of judgment of condemnation absolute, under Rule G55 b; costs on appeal to be divided between the appellant and the cross-appellant.*