# HARDWARE DEALERS MUTUAL FIRE INSUR-ANCE COMPANY *v.* SPRINGMANN ET AL.

[No. 293, September Term, 1971.]

*Decided July 3, 1972.*

The cause was argued on March 8, 1972, before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ., and reargued on May 16, 1972, before HAMMOND, C. J.,* and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and DULANY FOSTER, Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

Argued and reargued by *Allan Sosslau,* with whom were *Stanley L. Lipshultz* and *Friedman & Lipshultz* on the brief, for appellant.

Argued and reargued by *Leon Shampain,* with whom were *Vaughan & Shampain* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court. SMITH and DIGGES, JJ., dissent and DIGGES, J., filed a dissenting opinion in which SMITH, J., concurs at page 212 *infra.*

The principal question presented to us in this appeal is whether the appellant, Hardware Dealers Mutual Fire Insurance Company (Hardware), was required to provide personal injury and property damage insurance coverage for the appellees, Lillie E. Springmann, and her

minor son, Steven A. Springmann (added to the policy of Mrs. Springmann as a named insured), and to provide a defense for the minor in an action arising out of an automobile accident involving the minor on September 17, 1968, the insurance policy having been cancelled by Hardware on March 3, 1968, with notice to Mrs. Springmann, but without having given notice of such cancellation to the Department of Motor Vehicles, Hardware having filed a JR-11 Financial Responsibility Insurance Certificate with the Department prior to the accident.

The answer to this question involves the construction and interpretation of various sections of Article 66½ of the Code (1957) with particular reference to the repeal by the General Assembly by Chapter 691 of the Laws of 1968, effective July 1, 1968, of subsections (d) and (e) of Art. 66½, § 93, which made the filing of a JR-11 form no longer mandatory for a minor to drive a motor vehicle upon the Maryland highways. The facts are not in dispute.

The insurance policy involved was duly issued by Hardware and on July 22, 1966, Hardware filed the JR-11 form with the Department, certifying that the minor Steven was insured under his mother's policy. The policy was cancelled by Hardware on March 3, 1968. Notice of the cancellation was duly given to Mrs. Springmann and was received by her. No notice, however, was given by Hardware to the Department of the cancellation. Steven was involved in a motor accident on September 17, 1968; but Hardware was not notified that the accident had occurred until August 11, 1969 (some 11 months later), when the Unsatisfied Claim and Judgment Fund Board demanded that Hardware complete an investigation of the accident and defend the tort action which had been instituted against the Springmanns. This request not having been acceded to by Hardware, the Springmanns, on March 15, 1971, instituted a declaratory judgment action at law in the Circuit Court for Prince George's County against Hardware and Winston Fowlkes (the plaintiff in the tort action), seeking declarations that (1)

coverage for any liability which they might incur in connection with the accident be afforded them under the policy and the JR-11 form; (2) Hardware be obliged to furnish counsel to defend the tort action; (3) a counsel fee be awarded to plaintiffs for legal services rendered in connection with the declaratory judgment action and the tort case; and, (4) for other relief. The lower court (Robert B. Mathias, J.) granted summary judgment for the Springmanns and by an order of October 14, 1971, declared, in effect, that inasmuch as Hardware did not comply with the requirements of Art. 66½, § 142 in regard to cancellation of the policy, the JR-11 form was in effect at the time of the occurrence of the accident so that Hardware must provide the Springmanns with insurance coverage and a defense. The lower court also awarded counsel for the Springmanns a counsel fee of $200.00 rather than the $1,675.00 fee requested by counsel.

We have concluded that as a result of the amendatory legislation, Hardware was not required to provide the Springmanns with coverage and a defense and, accordingly, we will reverse the order of October 14, 1971. In view of this conclusion, it becomes unnecessary for us to decide the questions regarding the awarding of a counsel fee and its amount.

We now turn to a consideration of the applicable statutory provisions in order to ascertain the legislative intent. To discover this intent, we must consider the relevant legislation as a whole and seek to reconcile all of those statutory provisions. As Judge Delaplaine stated for the Court in *Smith v. Higinbothom*, 187 Md. 115, 131-32, 48 A. 2d 754, 762 (1946):

> "[S]tatutes which are not inconsistent with one another, and which relate to the same subject-matter, are in *pari materia* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, although they contain no reference to one another and were passed at different times."

The general purpose of the legislation and the effectuation of that purpose are important considerations in ascertaining the legislative intent.

As Judge (later Chief Judge) Marbury aptly stated in *Barnes v. State*, 186 Md. 287, 291, 47 A. 2d 50, 52 (1946), *cert. denied*, 329 U. S. 754, 67 S. Ct. 95, 91 L. Ed. 650:

> " 'Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them, as best to answer that intention * * * and when discovered ought to be followed, although such construction may seem to be contrary to the letter of the statute.' "

Art. 66½, § 93, *Application of minors* provided as follows prior to July 1, 1968:

> "(a) *Signing by person or guardian or other responsible person.*—The application of any person under the age of twenty-one (21) years for an instruction permit or operator's or chauffeur's license shall be signed and verified, before a person authorized to administer oaths, by a parent or guardian of the applicant and if there be no parent or guardian, then by an employer of such minor, and if there be no parent, guardian or employer then by a responsible person who is willing to assume the obligation imposed under this article upon a person signing the application of a minor. The Department shall clearly set forth on the application the responsibilities assumed under this section.
>
> "(b) *Imputation of negligence.*—Any negligence of a minor under the age of twenty-one (21) years when driving a motor vehicle upon a highway in this State shall be imputed to the person who has signed the application of such minor for a permit or license, and that person shall be jointly and severally liable with such

minor for any damages caused by such negligence except as otherwise provided in subsection (c) of this section.

"(c) *When minor proves financial responsibility.*—In the event a minor deposits or there is deposited upon his behalf proof of financial responsibility in respect to the operation of a motor vehicle owned by him, or if not the owner of a motor vehicle, then with respect to the operation of any motor vehicle, in form and in amounts as required under the motor vehicle financial responsibility laws of this State, then the Department may accept the application of such minor when signed by one parent or the guardian of such minor, and while such proof is maintained such parent or guardian shall not be subject to the liability imposed under this section.

"(d) *Compliance with proof of financial responsibility as required by § 122 of this article.*—On and after June 1, 1954, the application of any person under the age of twenty-one (21) years for an instruction permit or operator's or chauffeur's license shall be accompanied by such proof of financial responsibility as is required under the provisions of § 122 of this article. Nothing in this subsection shall be deemed or taken to affect in any way any person who, prior to June 1, 1954, has secured an instruction permit or operator's or chauffeur's license under the provisions of subsections (a), (b) and (c) hereinabove.

"(e) *Proof to remain in effect until licensee becomes twenty-one.*—The proof of financial responsibility required by this section shall remain continuous and in effect until such minor licensee shall become twenty-one (21) years of age. In the event that such licensee shall fail to maintain the proof of responsibility until such

minor shall become twenty-one (21) years of age, then the Department shall have the right to suspend such license until proof shall be renewed or until such minor shall become twenty-one (21) years of age, whichever shall first occur."

It will be observed that by subsection (d) on and after June 1, 1954 (when subsection (d) became effective by the provisions of Chap. 75 of the Laws of 1954), minors were placed in a *classification of persons required* to have their applications for a license accompanied by proof of financial responsibility "as is required under the provisions of § 122 of this article."

§ 122, *Security required following accident unless evidence of insurance—Suspension for failure to deposit security,* provides, in relevant part:

"(a) *Generally.*—Within ninety days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death, or damage to the property of any one person in excess of one hundred dollars ($100.00), the Department shall suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident and if such operator is a nonresident the privilege of operating a motor vehicle within this State, and if such owner is a nonresident the privilege of the use within this State of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in a sum which shall be sufficient in the judgment of the Department to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such operator or owner, and unless such operator or owner, or both, has previously given or shall immediately give and thereafter maintain, for a period of three (3) years, proof

of financial responsibility; provided notice of such suspension shall be sent by the Department to such operator and owner not less than 10 days prior to the effective date of such suspension and shall state the amount required as security.

"(b) *Operators or owners covered by insurance.*—This section shall not apply:

"(1) To such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident;

"(2) To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;

"(3) To such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the Department, covered by any other form of liability insurance policy or bond.

"(c) *Requirements for insurance policy or bond.*—(1) No such policy or bond shall be effective under this section unless issued by an insurance company or surety company authorized to do business in this State, except that if such motor vehicle was not registered in this State or was a motor vehicle which was registered elsewhere than in this State at the effective date of the policy or bond, or the most recent renewal thereof, such policy or bond shall not be effective under this section unless the insurance company or surety company if not authorized to do business in this State shall execute a power of attorney authorizing the Department to accept service on its behalf of notice or process in any action upon such policy or bond arising out of such accident; provided,

however, every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit exclusive of interests and costs, of not less than $15,000 because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than $30,000 because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property, to a limit of not less than $5,000 because of injury to or destruction of property of others in any one accident.

"(2) Immediately upon receipt of notice of such accident, the insurance company or surety company which issued such policy or bond shall file with the Department a written notice that such policy or bond was in effect at the time of such accident."

Subsection (d) provides that § 122 shall also not apply to persons qualifying as self-insurers. Self-insurers may be a person in whose name more than 25 motor vehicles are registered and who obtains a self-insurance certificate from the Department. There are also provisions for persons operating taxicabs other than under a permit of the Public Service Commission. The certificate of self-insurance may be issued by the Department when it is satisfied that the applicant "is possessed and will continue to be possessed of ability to pay judgments against such person * * *." It is also provided that the Department may upon reasonable grounds cancel a certificate of self-insurance and the failure to pay a judgment within 30 days after it becomes final shall constitute a reasonable ground for such cancellation.

§ 142, *Notice required before cancellation or annulment,* which was principally relied upon by the lower court, provides:

"When any form of proof of financial respon-

sibility has been certified to the Department or the Public Service Commission as the case may be, such proof shall not be cancelled or annulled by any party in interest except upon not less than thirty (30) days' notice to the Department or the Public Service Commission as the case may be, except that a motor vehicle liability insurance policy subsequently procured and certified shall, on the effective date of the insurance afforded by such policy, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates."

It will be observed that § 142 provides for a statutory requirement that certifying insurers must serve notice upon the Department that they intend to, or are in fact, cancelling a policy of insurance which has been certified as *"proof of financial responsibility."* The 30-day period is provided to enable the Department to make an appropriate response to the cancellation. § 142 is consistent with and furthers the general purpose of the financial responsibility statutes to protect an innocent public from sustaining losses resulting from a motor vehicle accident caused by the negligence of other persons. This section is designed to complete the control of the Department for seeing to it that certain categories of drivers and certain types of motor vehicles maintain the degree of financial responsibility required by the motor vehicle law. § 142 does not by its terms and was not intended by the General Assembly to encompass *every* situation in which the Department would have been made aware of the status of the financial responsibility of every motor vehicle driven in Maryland.

As we have indicated, the requirement to prove financial responsibility only attaches to drivers of motor vehicles which fall within a specified category, as, for example, those involved in an unresolved accident, those convicted of certain traffic offenses, those owning a vehicle used for hire or rent, and, between June 1, 1954, and

July 1, 1968, to minors seeking to obtain a license to operate motor vehicles. Not all operators or owners of motor vehicles, however, are required to submit proof of financial responsibility. For example, when the owner of a motor vehicle seeks to register his vehicle in Maryland, he is only obligated to pay an uninsured motorist fee or to state that he has insurance meeting the minimum requirement of the Department; there is no requirement for certification, nor are all certificates rescinded by notice. For example, under the provisions of § 142, itself, a subsequent certification relieves the insurer of the original certification of the duty to notify the Department and by the provisions of § 93 (e), the certification automatically terminated when the minor became 21 years of age.

The purpose of § 142 was to provide notice of cancellation of policies insuring the members of the class specifically *required* to establish proof of financial responsibility so that the Department would be in a position to effectuate a suspension of tags, registration and driver's license, where necessary, in order to remove the specified person or vehicle from the use of the Maryland highways. When the Legislature repealed the requirement of proof of financial responsibility as applicable to a particular class of drivers or owners, the purpose of § 142 was no longer applicable. This was done so far as minors were concerned by the repeal of subsections (d) and (e) of the Acts of 1968, Ch. 691 so that after July 1, 1968, when that Act became effective, minors were no longer in the category of drivers required to furnish proof of financial responsibility and hence that class was no longer within the purpose of § 142.

The Springmanns correctly point out that prior to July 1, 1968, minors were required to file proof of financial responsibility and that the provisions of § 142 then applied to the JR-11 form filed by Hardware on July 22, 1966; and we have so held. *Peninsula Insurance Co. v. Houser*, 248 Md. 714, 238 A. 2d 95 (1968) and *Erie Insurance Exchange v. Gosnell*, 246 Md. 724, 230 A. 2d

467 (1967). When this requirement was abolished by the General Assembly, however, the provisions of § 142 thereafter no longer applied; and Hardware, having cancelled its policy with Mrs. Springmann prior to the accident, was under no obligation to supply coverage and defend the tort action.

In *Erie, supra,* the case arose prior to the repeal of subsections (d) and (e) of § 93. We held that although the policy provided for a 20-day cancellation period, which was given by the insurer to both the insured and the Department, the insurer was required to supply coverage and defend under the policy for an accident which occurred during the thirty-day period, regardless of the 20-day period set forth in the policy.

In the opinion in *Erie,* it was stated that the JR-11 form was filed in "accordance with Sections 131, 135 and 93 (c)"; but we do not understand that this language was intended to exclude its filing under § 93 (d) and (e) also. Indeed, an examination of the record in *Erie*—which was decided on an order sustaining a demurrer to a declaration, as particularized—indicates that the JR-11 form was filed pursuant to *all* of the provisions of § 93. In the endorsement by the insurance carrier in *Erie* for "Drive Other Car Coverage, Statutory Coverage for Named Minors (Maryland)," which was in the particulars furnished and thus a part of the declaration for purposes of the demurrer, it is stated:

> "It is agreed that:
> "Such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability applies to the operation of any automobile by the minor named below *in accordance with the provisions of Section 92 of Article 66½ of the Annotated Code of Maryland (1951 Edition), as amended,* subject to the following provisions: [listing six conditions not relevant here]" (Emphasis supplied.)

Section 92 of Art. 66½ of the 1951 Code is now § 93

of Art. 66½ of the 1957 Code (1971 Repl. Vol.) with subsections (a), (b) and (c) before the additions of subsections (d) and (e) by amendment by the Act of 1954, Ch. 75, effective June 1, 1954. The language "as amended," appearing in the endorsement filed subsequent to June 1, 1954, obviously indicated that the filing was pursuant to subsections (d) and (e) added *by amendment* as well as pursuant to subsections (a), (b) and (c). The reference in the opinion to § 93 (c), as we have stated, was not intended to exclude subsections (d) and (e) particularly in view of the provisions of the endorsement itself indicating that the endorsement was filed *pursuant to the entire section*. In any event, the reference to § 93 (c) was not a holding, but, at best, a mere dictum. In short, we do not consider the *holding* in *Erie* to be inconsistent with our holding in the present case. There is, in our opinion, no departure from the doctrine of *stare decisis*.

In the instant case, in considering the relevant statutory provisions as a whole and applying the general purpose of those provisions, we are of the opinion that when the General Assembly removed the *requirement* for filing proof of financial responsibility for use of the Maryland roads by minors, thereafter an insurer was not required to give the 30-day notice provided for in § 142, the reason and public policy behind the giving of such a notice having been removed and obliterated.

> *Order of October 14, 1971, reversed and case remanded for the entry of an order making a declaration in accordance with this opinion, the appellees to pay the costs.*

*Digges, J., dissenting:*

I find myself in divergence from the majority. In this case the appellee, Lillie E. Springmann, individually and

as mother and next friend of Steven A. Springmann, initiated this litigation in the Circuit Court for Prince George's County. She asked the court to declare that Hardware Dealers Mutual Fire Insurance Company, appellant, was required to provide automobile insurance coverage and a legal defense for her minor son who, while operating a car, collided with a motorcycle driven by Winston Fowlkes. Both parties are in total harmony about the factual pattern—the dissonance arises in interpreting the effect that legislative action has on these particular facts.

It is first necessary to elucidate certain sections of Article 66½ as that article existed in the Maryland Code (1957, 1967 Repl. Vol. and its 1969 Cum. Supp.) prior to re-enactment in 1970, specifically §§ 93 and 142. Between 1954 and 1968, § 93 was comprised of five subsections (a through e) which dealt with the application of a minor for a motor vehicle operator's license. Subsections (a), (b) and (c) were originally enacted in 1943 and have remained intact even to the present time, though subjected to some minor alterations over the years. (Ch. 1007, § 85 of the Laws of Maryland 1943, codified in the 1951 Code as Art. 66½, §§ 92 (a), (b) and (c) and changed in the 1957 Code to §§ 93 (a), (b) and (c).) [1] Pursuant to § 93 (a) it was required that a parent, guardian or, in their absence, a responsible person, sign a minor's application before he could be issued a license. Section 93 (b) provided that any negligence by the minor while driving an automobile would be imputed to this signatory unless the "minor deposits or there is deposited upon his behalf *proof of financial responsibility*" with the Department of Motor Vehicles as permitted by section 93 (c). (Emphasis added.) If the option allowed by (c) was utilized then whoever furnished such proof could do so by having an insurance

---

1. When Art. 66½ was re-enacted in 1970 (Ch. 534 Laws of Maryland) §§ 93 (a), (b) and (c) were incorporated as Art. 66½, §§ 6-107 (a), (b) and (c) in the Code (1957, 1970 Repl. Vol.).

company insure the minor and certify to the Department of Motor Vehicles proof of financial responsibility.[2] This would be accomplished by having the company file a JR-11 form—a "Maryland Minor's Financial Responsibility Insurance Certificate"—with the Department. It should be emphasized that (c) did not make filing such proof obligatory.

In 1954, the Legislature expanded § 93 by enacting subsections (d) and (e). (Ch. 75 of the Laws of Maryland, codified originally as §§ 92 (d) and (e) in the 1951 Code.) These two additional subsections then made verification of financial responsibility mandatory before any minor could be licensed to operate a motor vehicle in Maryland. Section 93 (d) states:

> *"Compliance with proof of financial responsibility as required by § 122 of this article.*—On and after June 1, 1954, the application of any person under the age of twenty-one (21) years for an instruction permit or operator's or chauffeur's license shall be accompanied by such proof of financial responsibility as is required under the provisions of § 122 of this article. Nothing in this subsection shall be deemed or taken to affect in any way any person who, prior to June 1, 1954, has secured an instruction permit or operator's or chauffeur's license under the provisions of subsections (a), (b) and (c) hereinabove." [3]

It was stipulated in § 93 (e) that such proof would re-

---

2. There were also other methods for establishing proof of financial responsibility. Section 130 of Art. 66½, Code (1957, 1967 Repl. Vol.) (now amended and codified as Art. 66½, § 7-320 Code (1957, 1970 Repl. Vol.)) provided that it could be done in any of the following ways:
"(1) By a policy or policies of insurance;
(2) By a surety bond or bonds;
(3) By deposit of money or securities".
3. Section 122 (1957, 1967 Repl. Vol.) required anyone who had been in a motor vehicle accident within this State, resulting in more than $100 damage, to "immediately give and thereafter maintain, for a period of three (3) years, proof of financial responsibility".

main in effect until the minor became twenty-one years old and if he should fail to maintain the verification of financial responsibility during his minority "then the Department shall have the right to suspend such license."

Effective July 1, 1968, the Legislature repealed §§ 93 (d) and (e) (Ch. 691 of the Laws of Maryland) so that it was no longer mandatory for a minor to prove financial responsibility before becoming a licensed operator of a motor vehicle. The General Assembly also gave serious consideration to rescinding §§ 93 (b) and (c), but such action was not in fact taken.[4] Therefore, subsequent to June 30, 1968, the JR-11 form could still be filed voluntarily as proof of financial responsibility so as to insulate the signatory under § 93 (a) from imputed liability in the event the minor was negligent in driving a motor vehicle.

At the same legislative session of 1943 in which §§ 93 (a), (b) and (c) were passed, § 142 was also enacted (Ch. 1007, § 123, codified in the 1951 Code as § 138 and changed to § 142 in the 1957 Code) and still remains in force.[5] That section states:

> "*When any form of proof of financial responsibility has been certified to the Department* or the Public Service Commission as the case may be, such proof shall not be cancelled or annulled by any party in interest except upon not less than thirty (30) days' notice to the Department or the Public Service Commission as the case may be, except that a motor vehicle liability insurance policy subsequently procured and certified shall, on the effective date of the insurance afforded by such policy, terminate the insurance

4. Ch. 691 of the 1968 Laws of Maryland indicates that as originally introduced, the bill which led to the repeal of (d) and (e) also intended the same fate for (b) and (c). However, prior to passage, the bill was amended so that the other two subsections remained intact. At no time was (a) included in the repeal proposals.

5. Section 142 is currently codified as Art. 66½, § 7-325 Code (1957, 1970 Repl. Vol.).

previously certified with respect to any motor vehicle designated in both certificates." (Emphasis added.)

Having set forth the background and purpose of these laws the paramount task now is to evaluate their effect in terms of the present case.

On July 22, 1966, the appellant certified to the Maryland Department of Motor Vehicles, on a JR-11 form, that Steven Springmann was insured under his mother's policy. In March 1968, this policy was cancelled but the insurer, through a clerical oversight, failed to notify the Motor Vehicle Department of the cancellation. On September 17, 1968, Steven was involved in the accident. Appellant was not apprised of this until August 11, 1969 (11 months later), when the Unsatisfied Claim and Judgment Fund Board demanded that Hardware Mutual complete an investigation of the collision and defend the tort action instituted against the Springmanns. When that entreaty was ignored appellee initiated this proceeding for declaratory relief. Judge Mathias granted the Springmanns' motion for summary judgment, concluding that since Hardware Mutual did not comply with the requirements of § 142 it must provide the appellees with insurance coverage and a defense. From that ruling this appeal results.

The insurance company concedes, as it must, that if Steven's accident had occurred prior to July 1, 1968 (the repeal date of §§ 93 (d) and (e)), it would have had to provide insurance coverage and a legal defense since it did not comply with the requirements of § 142 by giving the Department 30 days' notice that the policy had been cancelled. *Erie Ins. Exchange v. Gosnell*, 246 Md. 724, 230 A. 2d 467 (1967) ; *Peninsula Insurance v. Houser*, 248 Md. 714, 238 A. 2d 95 (1968). However, Hardware Mutual claims, and the majority agrees, that the necessity of notifying the Department concerning cancellation in order to avoid continuing liability was no longer required after June 30, 1968 because the Legislature re-

pealed § 93 (d). The majority attempts to buttress its precarious position on the assumption that the JR-11 was only filed pursuant to that now discarded section. But clearly such is not the case. The JR-11 was used before the enactment of § 93 (d) and has survived that law's expiration. On its face that form, as currently utilized, states:

> "In the event of cancelation or non-renewal of such policy notice of such cancelation or non-renewal will be filed with the Commissioner of Motor Vehicles thirty (30) days in advance of the effective date of such cancelation or non-renewal."

It is true that filing proof of financial responsibility is no longer mandatory but the repeal of subsection (d) did not sound the death knell for the JR-11. It has the same purpose today as it had prior to 1954. While there is no statutory compulsion requiring that proof of financial responsibility be filed, once it is, § 142 explicitly makes it a prerequisite that 30 days' notice be given in order to effectuate the cancellation of *"any form of proof of financial responsibility"* which *"has been certified to the Department."* (Emphasis added.) This section by its unequivocal language does not purport as the majority suggests that its application is constrained to only those circumstances where the filing of proof of financial responsibility is required. In interpreting this very same section (142) and its relation to § 93 (c) Judge Oppenheimer, speaking for the Court in *Erie Ins. Exchange v. Gosnell, supra,* stated at p. 732:

> "When the language of a statute is plain and free of ambiguity, and has definite and sensible meaning, it is conclusively presumed to be the meaning of the Legislature; in ascertaining the legislative intent, all parts of the Act are to be considered together. We hold that Section 142 means, clearly and unambiguously, that *when a policy of insurance has been offered as proof of*

*financial responsibility, with an endorsement
specifically covering the liability of minors at-
tached, that policy, including the endorsement
as a part thereof, shall not be cancelled or an-
nulled except upon not less than 30 days' no-
tice.*" (Citations omitted. Emphasis added.)

In *Erie* the Court was faced with a strikingly similar
problem where "[i]n accordance with *Section . . . 93
(c)*, the insurer filed a Certificate of Financial Responsi-
bility (form JR-11) with the Maryland Department of
Motor Vehicles." (Emphasis added.) *Id.* at 727. The
policy provided that the company "could cancel it by
mailing written notice to the insured not less than twenty
days prior to the effective date of cancellation." *Id.* at
728. A cancellation notice was sent to both the insured
and the Department and on the day after the policy, by
its provisions, terminated but within the 30 day period
provided by § 142, the insured had an accident. It was
held there that the policy was in effect, regardless of the
20 day clause, until the 30 day period had run. In *Erie*,
though § 93 (d) had not then been repealed, this Court
specifically stated that *the JR-11 was filed in accordance
with § 93 (c)*, the non-obligatory provision, and held that
compliance with § 142 was nonetheless mandatory. It
would seem, based on the well established doctrine of
stare decisis, that the same result is compelled in this
case. However, somewhat surprisingly, Judge Barnes,
for the majority of the Court, has abandoned this hitherto
inviolable doctrine in a tenuous attempt to minimize the
scope of *Erie*.[6] He said:

---

6. Judges Barnes in this Court has previously discussed the
doctrine of stare decisis in several of his dissenting and concur-
ring opinions. Recently, in *State v. Lundquist*, 262 Md. 534, 567,
278 A. 2d 263 (1971) he stated:
   "Secondly, I am happy that Judge Smith set out in
   footnote 1 the statement from the dissenting opinion of
   Mr. Justice Frankfurter in *Barnette* showing the ex-
   traordinary departure by the Supreme Court in *Bar-
   nette* from the doctrine of *stare decisis*. This departure
   from a well-established and recently confirmed consti-
   tutional doctrine is, in my opinion, close to judicial irre-
   sponsibility and is an added reason why we should not
   extend the holding in that case."

"the JR-11 form was filed in 'accordance with Sections 131, 135 and 93 (c)'; but we do not understand that this language was intended to exclude its filing under § 93 (d) and (e) also. Indeed, an examination of the record in *Erie* . . . *indicates* that the JR-11 form was filed pursuant to *all* of the provisions of § 93." (Emphasis added.)

The lucid language of *Erie,* as expressed for the Court by Judge Oppenheimer, does not preclude a finding that the JR-11 was filed not only to satisfy § 93 (c), but also in accordance with §§ 93 (d) and (e). However, this concession is of no significance because it does not follow that as a consequence, notice of cancellation is unnecessary under § 93 (c). If anything, the logical conclusion should be that if the JR-11 was filed pursuant to either § 93 (c), (d), or both, as long as any of these statutory provisions remain effective, notification is still necessary.

The majority has not come to grips with the holding in *Erie*. Either that case applies or else it must be overruled; but in my opinion it is simply untenable for the majority to ignore the very explicit thrust of that case by concluding *Erie* and the majority opinion in the present appeal are consistent. *Erie,* without any hedging, clearly holds that § 142 requires notice of cancellation for a JR-11 filed pursuant to § 93 (c). I find it difficult to understand how this result can be reconciled with the majority's conclusion here that once §§ 93 (d) and (e) have been repealed notice of cancellation is no longer required for a JR-11 filed under § 93 (c). The majority in its opinion simply has not addressed itself to the fact that the clear and unequivocal language of *Erie* made cancellation of a JR-11 form, filed "[i]n accordance with Section . . . 93 (c)," mandatory. And, it is my feeling, they do not now have the license to conclude that its mention is of no consequence, but rather a gratuity. It seems a strange result indeed to hold that specific ref-

erence to § 93 (c) is "mere dictum", while silence or at best the inferential mention of §§ 93 (d) and (e) is binding. The majority should face up to the task of either overruling *Erie* or abiding by it; but under no circumstances should its force be ignored. The conclusion in the present case should be that once proof is filed, be it by necessity or volition, § 142 comes into effect since it clearly encompasses "any form of proof." Though optional, § 93 (c) provides protection not only to the insured but also to the public whose interest is served when a driver demonstrates proof of financial responsibility. I therefore would affirm the trial court's decision.

I am authorized to state that Judge Smith concurs in the views herein expressed.